CYNTHIA A. VIOLANO ET AL. *v.* HENRY J.
FERNANDEZ III ET AL.
(SC 17424)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.*

_____

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

312

Argued March 6—officially released October 17, 2006

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellants (plaintiffs).

*James S. Del Visco*, assistant corporation counsel, for the appellees (defendants).

*Opinion*

VERTEFEUILLE, J. Upon our grant of certification, the plaintiffs, Cynthia A. Violano and Cinderella of New

Haven, LLC (Cinderella), appeal from the Appellate Court's judgment, in a divided opinion, affirming the trial court's judgment in favor of the defendants, Henry J. Fernandez III and the city of New Haven (city). The plaintiffs claim that the Appellate Court improperly determined that the trial court properly had granted the defendants' motion to strike the complaint on the basis of the majority's conclusion that governmental immunity shielded the defendants from liability for their alleged negligent acts and omissions. We affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "On June 16, 1999, the plaintiffs entered into a ten year lease for property located at 26-28 Townsend Avenue (property) in New Haven. The plaintiffs also signed a purchase option agreement that gave Cinderella the exclusive right to purchase the property. Both the lease agreement and the purchase option were recorded on the appropriate land records.

"The plaintiffs intended to operate a restaurant on the property, which was located next to a firehouse. The plaintiffs obtained the necessary zoning permits and health department certificates for the restaurant. They also acquired a liquor permit from the department of consumer protection.

"On December 13, 1999, Fernandez, the director of the Livable City Initiative (Livable City),[1] recommended that the city take the property by eminent domain and Livable City's board voted in accordance with his recommendation. On January 3, 2000, the city's board of aldermen (board) approved the taking for the purpose of expanding the firehouse. The city filed and recorded

---

[1] According to the plaintiffs' complaint, Fernandez, as the director of Livable City, was "charged on behalf of the [c]ity with the care, maintenance, operation and redevelopment" of the city's various neighborhoods.

the certificate of taking in April, 2000. Subsequent to the taking, on November 3, 2000, a robbery occurred at the property and all of the plaintiffs' items, renovations and fixtures were stolen or destroyed.

"On June 18, 2001, the plaintiffs commenced the present action. On May 22, 2002, the defendants filed a motion to strike the entire complaint, alleging that it was insufficient to state a claim on which relief could be granted. Following a hearing on the defendants' motion, the court, on October 17, 2003, granted the defendants' motion. The defendants subsequently filed a motion for judgment, which the court granted on November 17, 2003." *Violano* v. *Fernandez*, 88 Conn. App. 1, 3–4, 868 A.2d 69 (2005).

The plaintiffs appealed from the judgment of the trial court to the Appellate Court, but limited their appeal to four of the six counts that they had alleged in their complaint.[2] In those four counts, the plaintiffs alleged that: (1) Fernandez was negligent with regard to the taking of the property; (2) Fernandez was negligent in securing the plaintiffs' personal property that remained on the property after the taking; (3) the city is liable on behalf of Fernandez for the damage caused by his negligence under General Statutes § 7-465;[3] and (4) the

---

[2] During oral argument before the Appellate Court, "the plaintiffs represented that they had withdrawn any claims with respect to the fifth count, which alleged that the city violated the plaintiffs' civil rights in violation of 42 U.S.C. §§ 1983 and 1988, and the sixth count, which alleged a claim of intentional infliction of emotional distress against Fernandez." *Violano* v. *Fernandez*, supra, 88 Conn. App. 3 n.1.

[3] General Statutes § 7-465 (a) provides in relevant part: "Any town, city or borough . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . ."

city is also liable for the damages caused by Fernandez' negligence under General Statutes § 52-557n.[4] Because only the second, third and fourth of these counts were the subject of the plaintiffs' petition for certification to this court, we will discuss only the pertinent parts of the Appellate Court's decision dealing with these counts.

The majority of the Appellate Court concluded that the trial court properly had struck the second count of the plaintiffs' complaint alleging that Fernandez was negligent in securing the plaintiffs' personal property. Id., 9–12. Specifically, the majority concluded that qualified governmental immunity applied to Fernandez' alleged actions because they were discretionary in nature. Id., 12. Further, the majority determined that none of the exceptions to Fernandez' qualified governmental immunity applied. Id. Turning to the third count, the majority concluded that this count also was struck properly by the trial court because the city's liability under § 7-465 was predicated on Fernandez' liability in the second count. Id., 12 n.11. Finally, the majority concluded that the trial court properly struck the fourth count because, under § 52-557n (a) (2) (B), a municipality is not liable for damages caused by its employee's negligent act or omission that requires the exercise of judgment or discretion. Id., 14. Because the majority had concluded that Fernandez' alleged acts of negligence, as set forth in the second count, were discretionary in nature, the city could not be held liable.[5] Id. Thereafter,

[1] General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ."

[5] Judge Bishop dissented from the majority opinion of the Appellate Court. He noted that the case law regarding a municipality's liability for the negligent performance of a private duty is unclear. *Violano* v. *Fernandez*, supra, 88 Conn. App. 16 (*Bishop, J.*, dissenting). Nevertheless, he concluded that the plaintiffs in the present case have alleged a private duty and that the breach of a private duty permits an action to be brought against the municipality and its employee. Id., 16–17. Further, Judge Bishop concluded in his

we granted the plaintiffs' petition for certification, limited to the following question: "Did the Appellate Court properly affirm the trial court's striking of counts two, three and four of the complaint?" *Violano* v. *Fernandez*, 273 Conn. 936, 937, 875 A.2d 544 (2005).

On appeal, the plaintiffs claim that the Appellate Court majority improperly concluded that the trial court properly had struck counts two, three, and four of their complaint. The plaintiffs make a four-pronged attack on the judgment of the Appellate Court. First, the plaintiffs argue that governmental immunity should not have been decided on a motion to strike because doing so denied them an opportunity to conduct discovery to determine whether the city had any applicable rules, policies, or directives that would have rendered Fernandez' actions ministerial in nature. Next, the plaintiffs argue that we should abandon the standard that we currently employ to determine whether a given act is ministerial or discretionary in nature. Specifically, the plaintiffs argue that this court's application of the distinction between ministerial and discretionary acts allows a municipality unfairly to remain immune from the damages caused by its own common-law negligence. Instead, the plaintiffs urge us to adopt a standard whereby, if the act is related to policy or policy making, the municipality would be immune, but if the act resulted simply from the implementation of a policy, then the municipality would be liable for damages caused by its negligence. The plaintiffs' third claim on appeal is that, even if we decline to abandon the distinction between ministerial and discretionary acts, the motion to strike should not have been granted because

dissent that, even if the defendants are nonetheless immune from the breach of its private duty because the complained of act was discretionary in nature, the plaintiffs have alleged sufficient facts to raise a question of fact regarding the imminent harm exception to discretionary act immunity, and, therefore, counts two, three, and four of the complaint should not have been struck. Id., 17.

the circumstances, as alleged in the complaint, warrant the application of an exception to Fernandez' qualified governmental immunity because the plaintiffs were identifiable victims subject to imminent harm. Finally, the plaintiffs claim that the defendants owed them a private duty,[6] and, accordingly, the special defense of governmental immunity does not apply to shield the defendants from liability caused by their breach of this duty.

In response, the defendants claim that the Appellate Court majority properly affirmed the trial court's judgment rendered after it had granted the defendants' motion to strike the complaint. The defendants first contend that the trial court properly decided the issue of qualified governmental immunity on their motion to strike because it was apparent from the face of the complaint that Fernandez' alleged acts and omissions were discretionary in nature. Further, the defendants contend that the identifiable person, imminent harm exception to governmental immunity does not apply because the alleged harm—the robbery—was not imminent. Finally, the defendants claim that, regardless of whether the duty was public or private, they are immune from liability if the act or omission complained of was discretionary in nature and no exception applied. We agree with the defendants.

"We begin by setting out the well established standard of review in an appeal from the granting of a motion to strike. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [defendants' motion] is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the com-

---

[6] This claim is consistent with the approach of the dissenting opinion in the Appellate Court. See footnote 5 of this opinion.

plaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Citations omitted; internal quotation marks omitted.) *Commissioner of Labor* v. *C.J.M. Services, Inc.*, 268 Conn. 283, 292–93, 842 A.2d 1124 (2004).

The following principles of governmental immunity are pertinent to our resolution of the claims raised by the plaintiffs on appeal. "The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Citations omitted; internal quotation marks omitted.) *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 48–49, 881 A.2d 194 (2005).

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . .

Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts."[7] (Citations omitted; internal quotation marks omitted.) *Doe* v. *Petersen,* 279 Conn. 607, 614–15, 903 A.2d 191 (2006).

There are three exceptions to discretionary act immunity. "Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force. . . . First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness

---

[7] This court has identified two other policy rationales for immunizing municipalities and their officials from tort liability. The first rationale is grounded in the principle that "for courts to second-guess municipal policy making by imposing tort liability would be to take the administration of municipal affairs out of the hands to which it has been entrusted by law." (Internal quotation marks omitted.) *Doe* v. *Petersen,* 279 Conn. 607, 614 n.7, 903 A.2d 191 (2006). Second, we have recognized that "a civil trial may be an inappropriate forum for testing the wisdom of legislative actions. This is particularly true if there is no readily ascertainable standard by which the action of the government servant may be measured . . . . Thus, [t]he policy behind the exception is to avoid allowing tort actions to be used as a monkey wrench in the machinery of government decision making." (Citation omitted; internal quotation marks omitted.) *Heigl* v. *Board of Education,* 218 Conn. 1, 6 n.5, 587 A.2d 423 (1991); see generally 18 E. McQuillin, Municipal Corporations (3d Ed. Rev. 2003) § 53.04.10, pp. 181–83.

or intent to injure. . . . Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. . . . Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Citations omitted; internal quotation marks omitted.) Id., 615–16.

The tort liability of a municipality has been codified in § 52-557n. Section 52-557n (a) (1) provides that "[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." Section 52-557n (a) (2) (B) extends, however, the same discretionary act immunity that applies to municipal officials to the municipalities themselves by providing that they will not be liable for damages caused by "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

I

The plaintiffs first claim that the question of whether the defendants are immune from liability under the doctrine of qualified governmental immunity is a question of fact that cannot be resolved on a motion to strike. In particular, the plaintiffs contend that deciding the issue of governmental immunity at the pleadings stage unfairly deprives them of the opportunity to conduct discovery to determine whether a city rule or other directive applied to Fernandez' actions. In addition, the plaintiffs argue, governmental immunity is a defense of confession and avoidance, and, accordingly, deciding

that issue on a motion to strike exempts the defendants from their burden of having to plead and prove this defense. We disagree.

"We have previously determined that governmental immunity must be raised as a special defense in the defendant's pleadings. . . . Governmental immunity is essentially a defense of confession and avoidance similar to other defenses required to be affirmatively pleaded [under Practice Book § 10-50]. . . . The purpose of requiring affirmative pleading is to apprise the court and the opposing party of the issues to be tried and to prevent concealment of the issues until the trial is underway." (Citation omitted; internal quotation marks omitted.) *Westport Taxi Service* v. *Westport Transit District*, 235 Conn. 1, 24, 664 A.2d 719 (1995); see also *Gauvin* v. *New Haven*, 187 Conn. 180, 184–85, 445 A.2d 1 (1982). Nevertheless, "[w]here it is apparent from the face of the complaint that the municipality was engaging in a governmental function while performing the acts and omissions complained of by the plaintiff, the defendant is not required to plead governmental immunity as a special defense and may attack the legal sufficiency of the complaint through a motion to strike." (Internal quotation marks omitted.) *DeConti* v. *McGlone*, 88 Conn. App. 270, 272, 869 A.2d 271, cert. denied, 273 Conn. 940, 875 A.2d 42 (2005); accord *Doe* v. *Board of Education*, 76 Conn. App. 296, 299 n.6, 819 A.2d 289 (2003); *Brown* v. *Branford*, 12 Conn. App. 106, 111 n.3, 529 A.2d 743 (1987); *Trzaska* v. *Hartford*, 12 Conn. Sup. 301, 302 (1943); see also *Evon* v. *Andrews*, 211 Conn. 501, 506–507, 559 A.2d 1131 (1989) (concluding that trial court properly granted motion to strike plaintiff's count alleging negligence against municipality and its officials because acts complained of were discretionary in nature); *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 170, 544 A.2d 1185 (1988) ("[n]otwithstanding the procedural posture of a motion to strike,

this court has approved the practice of deciding the issue of governmental immunity as a matter of law"). Determining whether it is apparent on the face of the complaint that the acts complained of are discretionary requires an examination of the nature of the alleged acts or omissions. See *Gauvin* v. *New Haven*, supra, 186.

In their complaint, the plaintiffs alleged that Fernandez failed to use reasonable care in securing the property to prevent theft or loss by: (1) causing or allowing the property to remain with defective or inadequate security; (2) failing to install a security system or security devices; (3) failing to install adequate locks; (4) failing to monitor adequately who possessed keys for the property; (5) failing to supervise adequately the security of the property; (6) failing to respond in a timely manner to reports of theft; and (7) failing to make reasonable and proper inspections of the property. The plaintiffs did not allege that Fernandez had failed to perform any function as required by a charter provision, ordinance, regulation, rule, policy, or other directive.

In *Evon* v. *Andrews*, supra, 211 Conn. 502, 504, the plaintiffs brought an action against the city of Waterbury and various city officials, alleging, in part, that the death of their decedents in a multifamily apartment house fire had been caused by the defendants' negligence in either failing to inspect properly the apartment house or to undertake remedial action to correct the apartment house's building code violations. The trial court granted the defendants' motion to strike this count on the ground that they were immune from liability because the complained of acts were discretionary in nature. Id., 504. On appeal, this court concluded that the complaint's allegations that the defendants failed " 'to make reasonable and proper inspections' " of the premises, and " 'to conduct adequate inspections' " were all discretionary acts. Id., 506. Specifically, the court stated that "what constitutes a reasonable, proper

or adequate inspection involves the exercise of judgment." Id.; see also *Segreto* v. *Bristol*, 71 Conn. App. 844, 857–58, 804 A.2d 928 (concluding that trial court properly granted defendant's motion for summary judgment on ground of governmental immunity because plaintiff's allegation that defendant negligently designed and maintained stairway involved exercise of discretion and judgment), cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002); but see *Tango* v. *New Haven*, 173 Conn. 203, 205–206 and n.1, 377 A.2d 284 (1977) (concluding that complaint's allegations that defendants had "caused or allowed and permitted" plaintiffs to sled on municipal golf course without supervision and safety measures were sufficiently broad to "permit proof of facts which would establish that the defendants failed properly to discharge ministerial functions").

In the present case, the essence of the plaintiffs' allegations are that Fernandez did not reasonably or adequately secure the property that was under his care, custody and control. These allegations are sufficiently similar to the *Evon* plaintiffs' allegations, that the defendant failed to make reasonable, proper, or adequate inspections of the subject premises. Accordingly, we conclude, as the court did in *Evon*, that Fernandez' allegedly negligent acts involved the exercise of judgment.

Moreover, the plaintiffs in the present case have failed to allege that the acts or omissions complained of were ministerial in nature because, as in *Colon* v. *Board of Education*, 60 Conn. App. 178, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000), the plaintiffs have not alleged that Fernandez was required by any city charter provision, ordinance, regulation, rule, policy, or any other directive to secure the property in any prescribed manner. In *Colon*, the plaintiffs brought an action against the New Haven board of education alleging that its employee, a teacher, had caused

personal injuries to one of the plaintiffs by negligently opening a door into her while she was in the school hallway. Id., 179–80. The Appellate Court concluded that the trial court properly had rendered summary judgment in favor of the defendants because it was apparent from the plaintiffs' complaint that the teacher was not performing a ministerial function. Id., 182. Specifically, the court determined that governmental immunity applied to the teacher's action in opening the door because the plaintiffs' complaint failed to allege the existence of any directive describing the manner in which the teacher was to open the door. Id., 182–83. Rather, the court concluded that the complaint simply alleged that the teacher exercised poor judgment in the manner in which she opened the door into the school's hallway. Id., 183; see also *Segreto* v. *Bristol,* supra, 71 Conn. App. 857 (noting that "complaint contained no allegation that the [defendant] city had some policy or directive in place regarding those duties with which it or its employees had failed to comply"); cf. *Kolaniak* v. *Board of Education,* 28 Conn. App. 277, 281–82, 610 A.2d 193 (1992) (concluding that governmental immunity inapplicable where school maintenance personnel failed to comply with board of education bulletin directing them to inspect and keep walkways clean on daily basis).

In the present case, the plaintiffs also have failed to allege that there was any rule, policy, or directive that prescribed the manner in which Fernandez was to secure the property. Rather, the complaint alleges only that Fernandez exercised poor judgment in the manner in which he secured the building. We therefore conclude that the Appellate Court majority properly determined that the complaint alleged conduct that was solely discretionary in nature, and, accordingly, that qualified governmental immunity applied to Fernandez' alleged acts and omissions.

The plaintiffs claim that utilizing a motion to strike to determine issues of governmental immunity is unfair as it precludes discovery of any relevant rules, policies, or directives that would make the complained of acts ministerial in nature. We disagree because dismissing the plaintiffs' complaint on a motion to strike did not unfairly preclude them from alleging that the complained of acts were ministerial in nature. First, rules, policies, or directives prescribing the manner in which a municipal employee must perform a certain function generally are accessible to the public prior to initiating a civil action against the municipality. For example, a municipality's charter, ordinances, and regulations are public records. In addition, other pertinent documents that direct the manner in which a municipal employee must carry out the functions of his or her job can be obtained through a freedom of information request pursuant to General Statutes § 1-210.[8] Second, nothing in the rules of practice prevented the plaintiffs from requesting the trial court to stay temporarily the motion to strike pending limited discovery regarding any pertinent rules, policies, or directives. Indeed, the plaintiffs in the present case were able to take two depositions, including one of Fernandez, prior to the trial court's ruling on the motion to strike. Third, the plaintiffs could have objected to the motion to strike on the ground

[8] General Statutes § 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records in accordance with subsection (g) of section 1-212, or (3) receive a copy of such records in accordance with section 1-212. . . ." General Statutes § 1-200 (1) (A) defines a "public agency" to include "any political subdivision of the state and any . . . town agency, any department, institution, bureau, board, commission, authority or official . . . of any city, town, borough, municipal corporation . . . or other political subdivision of the state, including any committee of, or created by, any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official . . . ."

that they needed the opportunity to plead additional facts, as they would normally be permitted to do under Practice Book § 10-57, to establish matters in avoidance of the special defense, such as one of the three exceptions to governmental immunity. The plaintiffs did not object, however, to the motion to strike on this ground and did not seek to revise their complaint, either after the defendants had filed their motion to strike or after the trial court had granted that motion, to allege facts that would bring the complained of acts within one of the three recognized exceptions to qualified governmental immunity. We therefore decline the plaintiffs' invitation to abandon our well established practice permitting resolution of the issue of governmental immunity by a motion to strike.

## II

The plaintiffs next claim that we should adopt a different standard to distinguish between acts that are ministerial and discretionary in nature. The plaintiffs claim that, under our qualified governmental immunity jurisprudence, a plaintiff must allege that there was a directive that required a municipal employee to perform the allegedly negligent act in a prescribed manner and that he or she failed to comply with this directive. On the basis of the current state of the law, the plaintiffs contend that actions sounding in common-law negligence can no longer be brought successfully against municipalities or their employees. The plaintiffs claim that this creates an unfair and unsound distinction between common-law duties, the breach of which does not result in liability for the municipality, and statutory duties, the breach of which results in liability for the municipality. The plaintiffs claim that we should follow the distinction used by other states under which governmental immunity would apply to acts that are related to policy decisions and, conversely, immunity would not apply to acts that implement policy. Under this standard, the

plaintiffs contend that common-law negligence would then be actionable against a municipality.[9] We decline to adopt such a standard.

We recognize at the outset that the distinction between ministerial and discretionary duties is not without its flaws. One commentator has stated that "the difference between 'discretionary' and 'ministerial' is artificial." 18 E. McQuillin, Muncipal Corporations (3d Ed. Rev. 2003) § 53.04.10, p. 183. Indeed, it has been observed that, "it would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." *Ham* v. *Los Angeles*, 46 Cal. App. 148, 162, 189 P. 462 (1920). Due to dissatisfaction with the distinction between the two types of acts, a number of jurisdictions have abandoned it in favor of the type of distinction between the planning and operational level favored by the plaintiffs in the present case. See 18 E. McQuillin, supra, § 53.04.20, and cases cited therein.

Despite this criticism of the distinction between ministerial and discretionary acts, our legislature nevertheless has adopted this common-law distinction as the basis for determining the limits to municipalities' governmental immunity. As we have noted previously herein, § 52-557n (a) (2) (B) has immunized political subdivisions from liability "for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Because the legislature has

---

[9] In support of their argument, the plaintiffs cite in their brief to this court the following cases as recognizing a distinction between policy making and policy implementation: *Birmingham* v. *Benson*, 631 So. 2d 902 (Ala. 1993); *Tomich* v. *Pocatello*, 127 Idaho 394, 901 P.2d 501 (1995); *Horta* v. *Sullivan*, 418 Mass. 615, 638 N.E.2d 33 (1994); *Lang* v. *Bay St. Louis/Waveland School District*, 764 So. 2d 1234 (Miss. 1999).

codified this distinction, we are bound by it. Cf. *184 Windsor Avenue, LLC* v. *State*, 274 Conn. 302, 312–18, 875 A.2d 498 (2005) (noting that, although sister states take varying approaches to applicability of sovereign immunity to contract claims against state, we are bound by scheme enacted by legislature requiring claims commissioner's permission prior to bringing contract claim against state). Irrespective of the merits of the competing approach advocated by the plaintiff, "[w]e must resist the temptation which this case affords to enhance our own constitutional authority by trespassing upon an area clearly reserved as the prerogative of a coordinate branch of government."[10] (Internal quotation marks omitted.) Id., 313.

### III

The plaintiffs next claim that the Appellate Court majority improperly rejected their claim that, even if the complained of acts were discretionary in nature, the complaint alleged sufficient facts to show that they fell within the imminent harm exception, one of the three recognized exceptions to discretionary act immunity. The plaintiffs contend that they qualify for this exception because they were identifiable victims of harm—the theft of their personal property—as they had installed the items on the property prior to the city's taking of the property by eminent domain. In addition, the plaintiffs claim that the harm was imminent because there had been a limited amount of time between the taking and the opportunity to remove their personal

---

[10] We are mindful, however, that the legislature has not enacted similar legislation codifying the limits of governmental immunity as it applies to municipal officials or employees. Nevertheless, any alteration to the common-law test employed to determine when governmental immunity applies to a municipal official or employee would alter the municipality's liability because of the indemnification obligation imposed on the municipality by § 7-465. Such a change therefore would have the effect of nullifying the legislature's codification of the distinction between ministerial and discretionary acts, which we decline to do.

property from the premises, and that the likelihood of the harm increased as more people in the area around the premises became aware that it was unguarded.[11] We disagree.

The imminent harm exception to discretionary act immunity applies "when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . . By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim;[12] and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." (Citation omitted; internal quotation marks omitted.) *Doe* v. *Petersen*, supra, 279 Conn. 616. We have stated previously that this "exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state." *Evon* v. *Andrews*, supra, 211 Conn. 507. If the plaintiffs fail to establish any one of the three prongs, this failure will be fatal to their claim that they come within the imminent harm exception. See *Doe* v. *Petersen*, supra, 620 (noting that failure to prevail on all three prongs of imminent harm exception precludes its application).

---

[11] The plaintiffs also claim that the fact that the property was located in a high crime area should be considered in evaluating the imminence of the harm. This fact, however, was not alleged in the complaint and we therefore may not consider it in reviewing the granting of a motion to strike. See *Rowe* v. *Godou*, 209 Conn. 273, 278, 550 A.2d 1073 (1988) (noting that court reviewing trial court's grant of motion to strike is limited to facts alleged in plaintiff's complaint). Moreover, as we noted in part I of this opinion, the plaintiffs did not seek to revise their complaint to allege such a fact either after the defendants had filed their motion to strike or after the trial court had granted that motion.

[12] "We have construed this exception to apply not only to [identifiable] individuals but also to narrowly defined [identifiable] classes of foreseeable victims." (Internal quotation marks omitted.) *Purzycki* v. *Fairfield*, 244 Conn. 101, 108, 708 A.2d 937 (1998).

In *Shore* v. *Stonington*, 187 Conn. 147, 148–49 and n.1, 444 A.2d 1379 (1982), one of our earliest cases dealing with this exception to discretionary act immunity, the plaintiff, whose decedent was killed by a drunk driver who had been stopped earlier by a municipal police officer, brought an action in negligence against the municipality and the police officer. This court concluded that the defendants were shielded from liability because the act complained of was discretionary and that the imminent harm exception did not apply because, during the police officer's encounter with the drunk driver, he could not have been aware that the driver's conduct threatened an identifiable victim with imminent harm. Id., 154.

Subsequently, in *Evon* v. *Andrews*, supra, 211 Conn. 508, this court concluded that the imminent harm exception did not apply to the plaintiffs' decedents who were killed in an apartment house fire. Specifically, this court determined that "[t]he class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of 'identifiable persons' . . . ." Id. In addition, this court concluded that the decedents were not subject to imminent harm because "[t]he risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future." Id.

In two more recent cases, however, this court has concluded that the identifiable person, imminent harm exception applied to the plaintiffs then before the court. First, in *Burns* v. *Board of Education*, 228 Conn. 640, 650, 638 A.2d 1 (1994), this court concluded that the plaintiff, a schoolchild who "slipped and fell due to icy conditions on a main accessway of the school campus, during school hours," was an identifiable victim. The court further concluded that the harm in *Burns* was imminent. Id. In reaching this conclusion, the court distinguished *Evon* because, unlike the fire in that case,

the accident in *Burns* "could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly 'treacherous' area of the campus. Further, the potential for harm from a fall on ice was significant and foreseeable." Id.

Subsequently, in *Purzycki v. Fairfield*, 244 Conn. 101, 104, 106, 708 A.2d 937 (1998), this court concluded that a plaintiff schoolchild, who was tripped when walking down a school's hallway from the lunchroom to recess, also fell within the imminent harm exception. The court reasoned that the facts of the case were more analogous to *Burns* than *Evon*; id., 109; and determined that, as in *Burns*, "the danger was limited to the duration of the temporary . . . condition . . . [and that] the potential for harm . . . was significant and foreseeable." (Internal quotation marks omitted.) Id., 110. Specifically, the court concluded that the danger involved "a limited time period and limited geographical area, namely, the one-half hour interval when second grade students were dismissed from the lunchroom to traverse an unsupervised hallway on their way to recess. Also, it involves a temporary condition, in that the [school] principal testified that every other aspect of the lunch period involved supervision. Finally, the risk of harm was significant and foreseeable, as shown by the principal's testimony 'that if elementary schoolchildren are not supervised, they tend to run and engage in horseplay that often results in injuries.' " Id.

Turning to the present case, we conclude that the plaintiffs' claim must fail because the imminence of the harm at issue—the theft of the plaintiffs' personal property—is more analogous to the harm at issue in *Evon* than *Burns* and *Purzycki*. The risk of a theft, like the risk of a fire, "implicates a wide range of factors that can occur, if at all, at some unspecified time in the future." *Evon v. Andrews*, supra, 211 Conn. 508.

Further, the danger of theft, unlike the ice in *Burns* and the one-half hour period of time when students went from the lunchroom to recess in *Purzycki*, was not subject to a limited time period. As alleged in the plaintiffs' complaint, the city took the property by eminent domain in April, 2000, and the theft occurred on approximately November 3, 2000. Thus, nearly seven months passed from the point that the defendants took title and control of the property and the theft. Accordingly, we cannot conclude that the risk of harm was subject to such a limited time period that the harm was imminent. Because the plaintiffs failed to allege sufficient facts to establish that the harm was imminent, we conclude that the imminent harm exception to discretionary act immunity is inapplicable to the plaintiffs.

IV

The plaintiffs' final claim is that the Appellate Court majority improperly rejected their claim that the defendants owed them a private duty that precludes the special defense of governmental immunity. In response, the defendants contend that the Appellate Court majority properly concluded that it need not engage in a public versus private duty analysis because, under this court's decision in *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 161, governmental immunity precludes liability regardless of whether the duty is public or private as long as the act complained of is discretionary in nature and none of the three recognized exceptions to discretionary act immunity applies. We agree with the defendants.

This court first recognized the distinction between public and private duty in *Leger* v. *Kelley*, 142 Conn. 585, 589–90, 116 A.2d 429 (1955), in which the court stated: "It is well settled that a public official is liable to an individual for his failure to perform a ministerial duty imposed upon him by statute only if the statute

creates a duty to the individual. . . . [Professor Cooley, in his treatise on Torts] states the law as follows: 'The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. [T.] Cooley, Torts (4th Ed. [1932]) [§ 300, pp. 385–86].' " (Citations omitted.) After surveying the law of other jurisdictions, this court stated in *Leger* that the test to discern between a public and private duty is as follows: "If the duty imposed upon the public official by the statute is of such a nature that the performance of it will *affect an individual in a manner different in kind from the way it affects the public at large,* the statute is one which imposes upon the official a duty to the individual, and if the official is negligent in the performance of that duty he is liable to the individual." (Emphasis added.) Id., 590–91.

This court next addressed the issue of the distinction between a public and private duty in *Stiebitz* v. *Mahoney*, 144 Conn. 443, 134 A.2d 71 (1957). In that case, the plaintiffs brought an action against the town of Manchester's chief of police and another police officer alleging that the chief of police negligently had appointed and failed to remove the police officer who committed battery, indecent assault, attempted rape, and armed robbery against both of the plaintiffs. Id., 445–46. The trial court sustained the demurrer filed by the chief of police. Id., 446. This court first observed that the decision of the chief of police to appoint, suspend, and remove officers involves the use of discretion. Id. The court next turned to the distinction between

public and private duties and concluded that, even though the "line that separates the duties owed solely to the general public from those owed to individuals is, at times, in shadow and difficult to trace . . . the duty to appoint proper persons to the police force and to remove or suspend officers who might [engage in criminal behavior] . . . was a duty owed to both the general public and every individual who might come in contact with such officers." Id., 447. Accordingly, this court concluded that the trial court improperly sustained the chief of police's demurrer on the ground that he did not owe the plaintiffs a private duty. Id. Despite this conclusion, this court went on to state, in dictum, that, because the act complained of involved the exercise of discretion, the chief of police could not be held liable for negligence in performing the complained of act. Id., 449.

More recently, in *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 168, this court noted that "[t]he [distinction between a public and private duty] and the [ministerial versus discretionary] test may appear to overlap and this has resulted in a lack of consistent analysis by this state's courts." In an effort to clarify the relevant inquiry, this court stated that "[w]*hether a public or private duty is established, there is no potential liability if the act complained of is a discretionary act that does not fit into any of the [three] narrow exceptions [to discretionary act immunity]* . . . . The finding of a public duty is often, but not always, dispositive of whether the act is a discretionary one. . . . In other cases, however, a breach of a public duty may still result in liability for the official if the act that he or she negligently performs is a ministerial act. . . . Thus, although the public duty doctrine provides the starting point of the analysis, distinctions between discretionary acts and ministerial acts are often controlling without regard to whether the duty is ascertained

to be public or private." (Citations omitted; emphasis added.) Id., 169–70; see also 18 E. McQuillin, supra, § 53.04.25, p. 198 ("[u]nlike [governmental] immunity, which protects a municipality from liability for breach of an otherwise enforceable duty to the plaintiff, *the public duty rule asks whether there was any enforceable duty to the plaintiff in the first place*" [emphasis added]).

On the basis of our case law, which construes the distinction between a public and private duty in light of the dispositive distinction between ministerial and discretionary acts, it is apparent that, even if a municipality and its official or employee owes a plaintiff a private duty, the municipality and its official or employee will be immune from liability for their negligence if the act complained of was discretionary in nature and does not fall within the three exceptions to discretionary act immunity.[13] See *Gordon* v. *Bridgeport*

---

[13] We do recognize that there is some overlap between the distinction between a public and private duty and the imminent harm exception to discretionary act immunity. The public versus private duty distinction seeks to answer the threshold question of whether the defendant owed the plaintiff a legally cognizable duty. See *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 170–72 (distinction between public and private duty applies to inquiry into whether defendant municipality owed duty to plaintiff); *Davidson* v. *Westminster*, 32 Cal. 3d 197, 202, 649 P.2d 894, 185 Cal. Rptr. 252 (1982) (question of duty to which public versus private duty distinction applies is threshold issue, "beyond which remain the [governmental] immunity barriers" [internal quotation marks omitted]); *Meaney* v. *Dodd*, 111 Wash. 2d 174, 178, 759 P.2d 455 (1988) ("The public duty doctrine recognizes that a fundamental element of any negligence action is a duty owed by the defendant to the plaintiff. Thus for one to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general [i.e., a duty to all is a duty to no one]." [Internal quotation marks omitted.]); 18 E. McQuillin, supra, § 53.04.25, p. 198 ("public duty rule asks whether there was any enforceable duty to the plaintiff in the first place"); see also *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 566, 707 A.2d 15 (1998) ("essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury" [internal quotation marks omitted]). The imminent harm exception to discretionary act immunity applies when the threshold duty

*Housing Authority,* supra, 208 Conn. 169–70; *Stiebitz* v. *Mahoney,* supra, 144 Conn. 449. As we have discussed in parts I and III of this opinion, the plaintiffs in the present case have alleged that the defendants were negligent in performing acts and omissions that were discretionary in nature and the complaint did not allege sufficient facts to bring the plaintiffs within the imminent harm exception. Accordingly, we conclude that the Appellate Court majority properly determined that the defendants are immune from any liability for harm caused by their alleged negligence regardless of whether the underlying duty can be characterized as private or public in nature.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

inquiry has been satisfied, but the plaintiff's claim has been stymied by the barrier of governmental immunity because the act complained of was discretionary in nature. Under the imminent harm exception, the municipality and its employee or official will not be immune for the damages caused by the breach of their duty of care when it was apparent to a public official or employee that his or her failure to act would likely subject an identifiable person to imminent harm because this represents "a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." (Internal quotation marks omitted.) *Doe* v. *Petersen,* supra, 279 Conn. 615. If it has been established that the defendant municipality owed the plaintiff a private duty, it stands to reason that, as a matter of necessity, the identifiable person prong of the imminent harm exception has been established as well. See *Leger* v. *Kelley,* supra, 142 Conn. 590–91 (duty is private in nature if its performance or nonperformance "will affect an individual in a manner different in kind from the way it affects the public at large").