******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., dissenting. In *Spitzer* v. *Waterbury*, 113 Conn. 84, 88, 154 A. 157 (1931), this court held, consistent with its prior precedent and the prevailing case law in the majority of our sister states, that the "[t]he work of constructing drains and sewers, as well as that of keeping them in repair, is ministerial, and the municipality is responsible for negligence in its performance." This line of cases imposing liability on municipalities for the negligent maintenance and repair of drains and sewers has been on our books for over a hundred years without any sign of legislative disapproval or criticism from this court. Today we overrule *Spitzer* and the well established case law on which it relied because the majority believes, contrary to *Spitzer*, that the maintenance and repair of a storm water drainage system is not ministerial, but discretionary. I cannot understand why we would choose to overturn an established line of cases, which has been codified by the legislature in General Statutes § 52-557n, without any compelling reason to do so. The choice to overrule this long-standing precedent becomes still more mystifying upon the realization that we are doing so in favor of an immunity doctrine that can only serve to encourage municipal carelessness by removing any financial incentive to act with due care. The immunity we confer today imposes the entire burden of a municipality's negligence on the unlucky few who suffer its direct consequences in the form of property damage or personal injury, rather than spreading those costs across the entire community that benefits from the relevant municipal operation. I respectfully dissent.

I begin with a brief review of certain facts that cannot be ignored at the summary judgment stage. The plaintiffs' opposition to summary judgment included a technical report dated October, 2009, entitled "Stormwater Management Report Nettleton Avenue Neighborhood" (drainage study), which was prepared by an engineering firm at the request of the defendant borough of Naugatuck (town). As the majority notes, the drainage study indicates that the flooding in the Nettleton Avenue neighborhood, where the plaintiffs reside, occurs after periods of particularly heavy rainfall and attributes the flooding "to the fact that runoff was required to flow through relatively narrow drainpipes that were in poor to fair condition and that the majority of catch basins in the area were old and had small openings that often became overgrown with vegetation or obstructed by trash." (Internal quotation marks omitted.) The majority's abridged summary, although accurate, fails to acknowledge all of the pertinent facts contained in the drainage study. Additional aspects of the drainage study warrant further elaboration because they illustrate the nature and extent of the alleged negligent acts and

omissions at issue in this case.

The drainage study explains that the cause of the flooding in the Nettleton Avenue neighborhood is not limited to the outdated and dilapidated condition of the drainage pipes and catch basins. Rather, "[t]he street is used as an overflow channel" and "[w]hen the street's capacity is exceeded, water will find and follow the path of least resistance to reach the watershed's natural low point . . . ." The street's ability to act as an overflow channel had been compromised by the town's role in repaving the neighborhood streets and curbs. The repaving had thickened the asphalt and reduced "the height of the curbs above the asphalt . . . decreas[ing] the curb's ability to carry storm water runoff." The excess storm water runoff "adds to the flow already in Trowbridge Place and accumulates at the low point in Trowbridge Place (about [fifty] feet east of Nettleton Avenue) where it overflows the curb and drains through the yards between Trowbridge Place and Moore Avenue." The plaintiffs' home is located at the low point on Nettleton Avenue, near the intersections of Trowbridge Place and Moore Avenue.

According to the drainage study, residents on Nettleton Avenue between Trowbridge Place and Moore Avenue "described being flooded by surface waters that overflow the drainage system in the adjacent streets. The resident at 75 Goodyear Avenue described water backing up into the basement from Trowbridge Place during heavy storms. Residents along the east side of Nettleton Avenue and the north side of Moore Avenue describe water flowing over the curbs on the south side of Trowbridge Place and then through their yards causing water damage during heavy rainfall events. Such flooding was reported to have occurred every one or two years."

The drainage study reflects that the town was aware of the defective condition of the storm water drainage system and the need for maintenance and repairs to prevent flooding in the Nettleton Avenue neighborhood. Additionally, the plaintiffs submitted an affidavit in which Helen M. Northrup averred that she "repeatedly" informed the defendants, James Stewart, the town's director of public works, and Robert A. Mezzo, the town's mayor, that her home continued to flood and asked them to "[take] measures to protect" her home. Her requests were ignored and her home, as well as those in the surrounding neighborhood, continued to flood during periods of heavy rainfall with "rain surface water, black water, and storm water mixed with sewage . . . ."

In my view, the evidence supports a reasonable inference that the defendants were negligent in constructing, maintaining, and repairing all of the components of the storm water drainage system—municipal streets, curbs, catch basins, and drainage pipes—serving the plaintiffs'

neighborhood. The evidence further supports a reasonable inference that the plaintiffs' property was damaged by the repeated flooding caused by the defendants' negligent construction, repair, or maintenance of the storm water drainage system. I believe that the defendants' motion for summary judgment should have been denied on this factual record.

The majority affirms the grant of summary judgment in favor of the defendants because, in its view, the construction, maintenance and repair of a storm water drainage system requires the exercise of judgment or discretion under § 52-557n (a) (2) (B).[1] In arriving at this conclusion, the majority overrules this court's holding in *Spitzer* v. *Waterbury*, supra, 113 Conn. 88, that "[t]he work of constructing drains and sewers, as well as that of keeping them in repair, is ministerial, and the municipality is responsible for negligence in its performance." The majority characterizes *Spitzer* as an aberrant case without support elsewhere in Connecticut case law and rooted in an antiquated line of out-of-state cases which relied on "outmoded" distinctions between public and corporate duties, the law of negligence and nuisance, and duties assumed versus duties imposed. I disagree. *Spitzer* was anything but an outlier when decided and its fundamental underlying principles remain vital to this day.

The plaintiffs in *Spitzer* alleged that "after a heavy rainfall, [a] stream overflowed through a catch basin in front of the plaintiffs' house, discharging water into the street which ran into the plaintiffs' cellar, causing damage to their property." Id., 85. This court noted that the defendant city was "bound to exercise due care in the construction of its storm water sewers, and would be liable for its failure to do so though the work was done in the performance of a public and governmental duty. . . . The work of constructing drains and sewers, as well as that of keeping them in repair, is ministerial, and the municipality is responsible for negligence in its performance. . . . If, apart from any defect in the plan, the city's employees had so negligently and improperly constructed the outlet of this storm water sewer that, under conditions reasonably to be anticipated, it would not carry off the water collected by it, the city would be responsible for damage directly resulting to the plaintiffs' property." (Citations omitted.) Id., 88. The plaintiffs' complaint in *Spitzer* foundered only because it was not predicated on a claim that the city was negligent in the construction, maintenance, and repair of the storm water drainage system, but rather on a claim of negligent *design*—i.e., that "the failure of the city, in planning a storm water disposal system, to adopt a plan which provided an outlet of sufficient size adequately to dispose of the water discharged by the storm water sewer into the covered stream." Id., 88–89. This court held that "[s]uch a defect in the plan upon which the system was constructed, if one existed, was the result

of an error of judgment on the part of the officers of a public corporation on which has been cast the burden of discharging a governmental duty of a quasi-judicial character," and, therefore, "the defendant is not liable." Id., 89.

*Spitzer* holds that the design of a storm water drainage system is discretionary and, therefore, protected by municipal immunity, whereas the construction, maintenance, and repair of such a system is a ministerial duty for which the municipality may be held liable in negligence. Id. The majority contends that *Spitzer* stands alone in this view, but it has not cited a single decision of this court inconsistent with *Spitzer* regarding the subject at issue, i.e., municipal liability for property damage caused by the negligent construction, maintenance, and/or repair of a storm water drainage system.[2] To the contrary, there is extensive authority demonstrating that *Spitzer* accurately states the law governing this field of municipal operations. See *Phelan* v. *Waterbury*, 97 Conn. 85, 90–91, 115 A. 630 (1921) (reversing judgment in favor of plaintiff because there was no evidence that city negligently failed to clean and maintain catch basins; instead, plaintiff's injury was due to alleged inadequate design of storm water drainage system); *Katzenstein* v. *Hartford*, 80 Conn. 663, 666–67, 70 A. 23 (1908) (reversing judgment in favor of plaintiffs because trial court's charge to jury "entirely overlook[ed] the element of negligence" and city was liable for property damage caused by flooded sewer only "upon proof of such negligence"); *Rudnyai* v. *Harwinton*, 79 Conn. 91, 95, 63 A. 948 (1906) ("The statute imposing upon towns the duty of building and repairing necessary highways within their respective limits, does not authorize them, in the discharge of that duty, for the purpose of protecting their highways from surface water, to make use of the adjoining private property by constructing sluices and drains upon it, or by discharging upon it, by means of sluices or ditches or other structures designed for that purpose, the surface water which has accumulated because of the manner in which the road has been constructed, or has been collected by means of gutters or ditches on the sides of the roads. . . . When a municipality directs the performance of such an act, not within the scope of the imposed governmental duty, it becomes liable like any other [wrongdoer] for the resulting injury." [Citations omitted.]); *Judd* v. *Hartford*, 72 Conn. 350, 354, 44 A. 510 (1899) (Holding city was liable for flooding caused by obstructions negligently left in sewer because "its duty . . . to clean up, and remove any temporary appliances which, if left where they were, would render the sewer unserviceable or inadequate, was a new and ministerial one. It was a simple and definite duty arising under fixed conditions, and implied by law."); *Bronson* v. *Wallingford*, 54 Conn. 513, 520–21, 9 A. 393 (1887) (Holding municipal defendant was not liable for prop-

erty damage caused by storm water runoff because "[t]he defendant is accused of no negligence . . . it is not accused of a faulty construction or repair of the highway by reason of which the plaintiff has been injured . . . [nor is it] accused of improperly discharging the surface water on the plaintiff's premises in such a manner as to expose her property unnecessarily to special damage . . . . It is only in special cases, where wanton or unnecessary damage is done, or where damage results from negligence, that [towns, cities, and boroughs] can be held responsible." [Citations omitted.]).

Despite its age, the rule announced in *Spitzer* is neither vestigial nor forgotten. Rather, it has continued vitality and routinely is cited by trial courts for the central proposition "that the construction, maintenance, and repair of sewer and drainage systems is ministerial." See *Leone* v. *Portland*, Superior Court, judicial district of Middlesex, Docket No. CV-12-6008054-S (May 9, 2014) (58 Conn. L. Rptr. 201, 203); see also *DeMarco* v. *Middletown*, Superior Court, judicial district of Middlesex, Docket No. CV-11-6006185-S (April 3, 2014) (58 Conn. L. Rptr. 4, 6) ("given that the Supreme Court in *Spitzer* did not limit its holding only to sewer water systems, numerous trial courts have applied [its] holding toward sewage systems, and the plaintiff's complaint clearly alleges that the defendant's conduct has risen out of its construction and repair of sewers, the defendant's actions are deemed ministerial and government[al] immunity does not apply"); *Donahue* v. *Plymouth*, Superior Court, judicial district of New Britain, Docket No. CV-12-6016848, 2013 WL 1943951, *5 (April 22, 2013) (citing *Spitzer* and noting that "[t]he city is not immune from suit stemming from the performance of ministerial acts such as the construction and repair of sewers"); *Voghel* v. *Waterbury*, Superior Court, judicial district of Waterbury, Docket No. CV-96-0134423, 1999 WL 732984, *4 (September 9, 1999) (holding that defendant city was not immune from liability for property damage caused by sanitary sewer backup because, pursuant to *Spitzer*, defendant had ministerial duty to maintain and repair sewer system); but see *Pyskaty* v. *Meriden*, Superior Court, judicial district of New Haven, Docket No. CV-12-6005514-S, 2015 WL 5236948, *10 (August 3, 2015) (relying on Appellate Court's decision in *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 41 A.3d 1147 [2012], to hold "that [the] logic and . . . holding [in *Spitzer*] have been limited and should not be expanded to apply" to alleged improper construction, maintenance, and repair of detention basin).

Numerous additional authorities confirm that *Spitzer* correctly states the law of negligence as it relates to municipal storm water drainage systems. Contrary to the majority's account, the doctrinal analysis contained in *Spitzer*—and particularly its assertion that municipal

immunity does not extend to "ministerial" negligence in the maintenance and repair of drainage systems—accurately reflects the law as it existed, and still exists, in most jurisdictions. One of the leading tort law treatises at the turn of the twentieth century describes a legal framework that perfectly matches the doctrine as described in *Spitzer*: "[T]he act of constructing a bridge by a county, or of sewers and drains by a municipality, after the plan is formulated, *is regarded as ministerial in its nature*, and if there is any *negligence* in the construction and the keeping of the same in repair, the county (by statute) and the municipality (by common law) is liable for any injury caused by its neglect." (Emphasis added; footnotes omitted.) 1 E. Kinkead, Commentaries on the Law of Torts (1903) § 158, p. 364. "The importance of this distinction [between the discretionary planning stage and the ministerial construction and repair stage] is obvious. 'It may well be the law,' it is said, 'that a municipal corporation is not liable for any error or want of judgment upon which its system of drainage of surface water may be devised, nor for any defect in the plan which it adopts. The . . . council must, from necessity, exercise its judgment and discretion . . . and should be at liberty to adopt the best plan to accomplish the end.' . . . [F]or injury, occasioned by the plan of improvement, as distinguished from the mode of carrying it out, there is ordinarily no liability. The true distinction in this matter is that the obligation to establish and open sewers is a legislative duty, *while the obligation to construct them with care and not negligently and to keep them in repair is a ministerial act.* Some confusion is found among the cases touching this matter, due to improper distinction in the particular cases." (Emphasis added; footnotes omitted.) Id., pp. 364–65.; see also Recent Cases, "Municipal Corporations—Sewer System—Negligence in Construction—*Hart* v. *City of Neillsville*, 123 N.W. 125 (Wis.)," 19 Yale L.J. 389, 389 (1910); Recent Cases, "Municipal Corporation—Negligence in Maintaining Drains—Injury to Health and Property," 16 Harv. L. Rev. 68, 68–69 (1902).

According to contemporary sources, this liability rule continues to prevail in most jurisdictions. One leading treatise on municipal corporations observes that "municipalities are generally liable for negligence in the construction or failure to repair sewers and drains. Municipal liability for negligence in failure to repair is generally the same, in extent, as for negligence in the construction of sewers, or in the failure to keep sewers free from obstructions." (Footnotes omitted.) 18A E. McQuillin, Municipal Corporations (3d Ed. 2018 Rev.) § 53:154. Although this is not a uniform rule,[3] in general "[a] municipality must exercise ordinary care to maintain in proper manner a system of gutters and drains constructed by it in its streets, and if due to its negligence they become obstructed so as to overflow and

flood private premises, the city will be liable." Id.

It is true that this court has held in other contexts that municipal acts or omissions are not ministerial unless there is a "city charter provision, ordinance, regulation, rule, policy, or any other directive" requiring the municipality to act in a "prescribed manner." *Violano* v. *Fernandez*, 280 Conn. 310, 323, 907 A.2d 1188 (2006); see id., 324 (holding municipal official immune from liability for alleged negligence in securing plaintiffs' personal property because there was no "rule, policy, or directive that prescribed the manner in which [defendant] was to secure the property"). Particularly in light of *Spitzer*, however, there is no legal or logical basis to apply this narrow definition in the context of property damage caused by municipal storm water drainage systems. *Only* the municipality can construct a storm water drainage system and, once constructed, *only* the municipality can maintain the system and repair it to prevent property damage foreseeably resulting from its malfunction. Because storm water drainage systems are municipal property and subject to exclusive municipal control, no one else can perform the maintenance and repairs necessary to avoid the risk of harm. See *Judd* v. *Hartford*, supra, 72 Conn. 354 (holding municipality had ministerial duty to remove temporary obstruction because "[n]o one else could perform it" because "[t]he sewer was part of the defendant's property and under its exclusive control"). The plaintiffs in the present case were powerless to avoid the harm to their property, given the immovable nature of a permanent residential structure and the inevitable occurrence of heavy rainfalls in the area. Under these circumstances, "to permit the city to escape liability under the cloak of the exercise of a governmental function [is] unwarranted and unjust." *Denver* v. *Mason*, 88 Colo. 294, 299, 295 P. 788 (1931).

Contrary to the majority's assertion, I do not urge the creation of "an exception to the doctrine [of municipal immunity] in cases in which the dangerous condition was within the municipality's control and the municipality could have prevented the harm . . . ." The exception, rather, was created long ago by *Spitzer* and scores of other cases from around the country. Liability is imposed in these cases because, until today, Connecticut recognized the commonsense proposition that flood damage to private property caused by negligently maintained municipal storm water drainage systems is categorically different than the usual negligence case against a municipality. The rule announced in *Spitzer* did not "eviscerate" the municipal immunity doctrine; nor did it "disregard" its purpose. Instead, this court in *Spitzer* conducted a thorough analysis of the municipal immunity doctrine and made a "value judgment"; *Violano* v. *Fernandez*, supra, 280 Conn. 319; that the purpose of the doctrine was not served when it came to the negligent construction, maintenance, and repair of

storm water drainage systems. See *Spitzer* v. *Waterbury*, supra, 113 Conn. 89.

Indeed, my conclusion finds further support in the legislative codification of the common-law distinction between ministerial and discretionary acts or omissions in § 52-557n (a) (2) (B). See *Violano* v. *Fernandez*, supra, 280 Conn. 327. As this court previously has observed, "we are bound" by the codification of this distinction and, therefore, "[i]rrespective of the merits of [a] competing approach . . . [w]e must resist the temptation . . . to enhance our own constitutional authority by trespassing upon an area clearly reserved as the prerogative of a coordinate branch of government." (Internal quotation marks omitted.) Id., 328; see also *Durrant* v. *Board of Education*, 284 Conn. 91, 107, 931 A.2d 859 (2007) ("[s]ince the codification of the common law under § 52-557n, this court has recognized that it is not free to expand or alter the scope of governmental immunity therein"). The majority would have us believe that the legislature silently intended to overrule *Spitzer*, despite no textual indication of any such intention and no legislative history to support the contention. The customary rules of statutory construction require the opposite conclusion; we must presume that when the legislature enacted § 52-557n in 1986; see Public Acts 1986, No. 86-338, § 13; it was aware of and intended to codify the well established common-law principle expressed in *Spitzer* that the construction, maintenance, and repair of storm water drainage systems is a ministerial duty for which municipalities may be held liable in negligence.[4] See *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 793 n.21, 865 A.2d 1163 (2005) ("the legislature is presumed to be aware of prior judicial decisions involving common-law rules"); *Elliott* v. *Waterbury*, 245 Conn. 385, 406, 715 A.2d 27 (1998) ("we generally will not interpret a statute as effecting a change in a fundamental common-law principle . . . in the absence of a clear indication of legislative intent to do so" [citation omitted]). In light of the codification of this principle, we are not at liberty to expand the scope of municipal immunity in § 52-557n (a) (2) (B).

In my view, this case presents the strongest imaginable rationale for retaining liability for municipal negligence in the absence of a legislative mandate to the contrary.[5] The plaintiffs here did not sustain damage caused by a municipal activity from which they could opt out; nor did they have the ability to engage in self-help to repair the municipality's drainage system. They had no right themselves to repair the cracks, breaks, and misaligned joints in the existing sewers, or to replace the pipes with diameters too small to meet present conditions with larger pipes, or to regrade the neighborhood streets and raise the curbs to protect their home against the flooding. If the plaintiffs cannot come to court for redress under these circumstances, then they have nowhere to turn to obtain compensation

for the property damage they sustained as a result of the defendants' alleged negligence. This court's own precedent entitles the plaintiffs to relief if they are able to prove the elements of their claim. Because we are not required to overrule that precedent, we should not do so here. I therefore dissent.

[1] General Statutes § 52-557n (a) (1) (A) provides in relevant part that "[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . [t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." The statute further provides, however, that "a political subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." General Statutes § 52-557n (a) (2) (B).

[2] The majority's reliance on Appellate Court precedent contrary to *Spitzer*, such as *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 41 A.3d 1147 (2012), is misplaced in light of the well settled rule that "the Appellate Court and Superior Court are bound by our precedent." *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010).

[3] A minority of jurisdictions consider the maintenance and repair of storm water drainage systems to be discretionary. See 18A E. McQuillin, supra, § 53:154 ("[h]owever, it [also] has been held that the duty of a city to maintain its sewerage and drainage system in a good working and sanitary condition is a governmental function for which no liability against the municipality exists in an action for negligence"); see also annot., 54 A.L.R.6th §§ 7 and 8, pp. 247–60 (2010) (citing cases in § 7 for view that maintenance and operation of drains and sewers is ministerial function negating immunity, and, in § 8, for view that maintenance is discretionary function protected by immunity); id., p. 201 (noting, however, that "[i]n general, a city may be held liable for damage resulting from the obstruction or clogging of a municipal drain or sewer when it has actual or constructive notice of a problem and still fails to take action to remedy it").

[4] In subdivision (2) of § 52-557n (b), the legislature exempted municipalities from liability for "damages to person or property resulting from . . . the condition of a reservoir, dam, canal, conduit, drain or similar structure when used by a person in a manner which is not reasonably foreseeable," but did not do so with respect to damages resulting from the negligent construction, maintenance, or repair of storm water drainage systems. See *Spears* v. *Garcia*, 263 Conn. 22, 33–34, 818 A.2d 37 (2003) (holding that, absent evidence to contrary, exceptions listed in § 52-557n [b] were intended "to be exclusive" [internal quotation marks omitted]).

[5] It is important to emphasize that the issue on appeal is whether the plaintiffs' common-law negligence claims are barred by the doctrine of municipal immunity. The plaintiffs' complaint did not contain any claim for common-law nuisance; nor did it raise a statutory claim under General Statutes § 13a-138. For this reason, the majority's discussion of nuisance law; see footnote 17 of the majority opinion; is dicta. See *Cruz* v. *Montanez*, 294 Conn. 357, 376–77, 984 A.2d 705 (2009) ("[d]ictum includes those discussions that are merely passing commentary . . . those that go beyond the facts at issue . . . and those that are unnecessary to the holding in the case" [internal quotation marks omitted]). Unfortunately, the majority's discussion implies that a landowner in the plaintiffs' position would have no ability to recover against a municipality on a theory of nuisance. I find this assertion deeply troubling because that issue was not raised in this case, was not briefed by the parties, and was never litigated or adjudicated. Therefore, we should not be expressing views on it. Nothing in our decision today, by implication or otherwise, should be taken to preclude or limit a plaintiff's ability to recover on any theory other than the theory of negligence as pleaded. See, e.g., *State* v. *DeJesus*, 288 Conn. 418, 454 n.23, 953 A.2d 45 (2008) (noting that dicta is "not binding precedent" and, therefore, does not dictate outcome of future cases).