******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., dissenting. I respectfully dissent. The majority opinion concludes that, in the present case the police officers employed by the defendant, the city of Hartford, performed discretionary acts and, therefore, since no exception was claimed by the plaintiff, Orville Coley, the administrator of the estate of Lorna Coley (decedent), the Appellate Court properly affirmed the summary judgment rendered by the trial court. I disagree. The trial court's opinion regarding this wrongful death case reads as follows: "Under [General Statutes § 52-557n (a) (2) (B)], the [defendant] is not liable for discretionary acts and the officers' decision to try and find and arrest the domestic violence perpetrator and eventual shooter, was a discretionary act. The [decedent] . . . was not an identifiable victim subject to imminent harm, [her] daughter, [Jahmesha Williams], was. [General Statutes § 46b-38b (d)] requires the officers to exercise reasonable time and reasonable judgment which makes it discretionary." The Appellate Court agreed and further stated that "any duty owed by the police under the police response procedures was owed to Williams, not to [the decedent]." *Coley* v. *Hartford*, 140 Conn. App. 315, 325, 59 A.3d 811 (2013); see Hartford Police Dept. Policy and Procedure, No. 7-40 (October 1, 1986) (police response procedure). I disagree. In my view, since the decedent was a member of the household, the police procedures specifically applied to her. Further, I would conclude that, although the manner in which the police investigated the complaint was discretionary, once they determined that there was probable cause to make an arrest, and that the arrest could not be made at that time, they were under a ministerial duty to remain in the household with the family for a reasonable period of time. The "reasonable period of time" was again discretionary, but that discretionary action describes only the manner in which the police officers were to perform the ministerial act of staying in the house. Therefore, I would conclude that the act of not staying, which was admitted in the pleadings, constituted a question for the jury that should not have been discarded by way of summary judgment.

There is no need for me to recite the facts of the present case, which have been sufficiently set forth by the majority. I wish to highlight, however, paragraph 15 of the complaint, which reads as follows: "Williams had requested that the police officers stay at the scene, but the officers did not do so." The defendant's answer to paragraph 15 reads as follows: "Paragraph 15 is admitted." In my view, this answer becomes extremely important in any analysis related to the actions of the police officers when compared with their obligations pursuant to the department's regulations and proce-

dures. It is not, however, discussed in the majority opinion. Rather, the majority concludes that the relevant police procedures did not create a ministerial duty to remain at the scene for at least some period of time following their determination that probable cause existed that a family violence crime had been committed. I have three difficulties with the majority's conclusion.

First, this matter concerns the rendering of summary judgment in which the trial court made no findings of fact upon which it based its opinion. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012). As the majority correctly states, "the trial court's order granting summary judgment in favor of the defendant does not discuss the facts alleged in this case, nor does it reference any affidavits or supporting documents submitted by the parties." See footnote 5 of the majority opinion. It appears to me that the trial court based its opinion entirely on a question of law relating to a discretionary duty compared to a ministerial duty. With regard to this issue, I believe that there exists an issue of material fact. The majority concludes that the facts contained within the police report are uncontested. However, counsel for the plaintiff indicated during oral argument that a crucial fact was contested, namely, whether the police stayed for a reasonable period of time after a determination of probable cause for an arrest had been made. Therefore, I question the majority's statement regarding the uncontested nature of all of the facts in this case. It certainly appears that the key fact in the case—whether the police remained in the house after a probable cause to arrest determination was made and the suspect could not be found—was, indeed, contested. The majority goes on to recite some facts that, it contends, may indicate that the police did stay after a probable cause determination was made. In my view, however, a material issue of fact is created by the admission in the pleadings that the police did not stay when requested to do so by Williams. Viewing this issue in a light most favorable to the plaintiff, the facts recited by the majority are directly contradicted

by the admission in the pleadings. In view of the fact that this issue of material fact was never discussed, let alone resolved, in either the trial court, Appellate Court or the majority opinion, I believe that it can only be resolved by the trier of fact, and the case must be remanded for further proceedings.

Second, the majority explains the following: "At oral argument before this court, the defendant, as evidenced by the following colloquy, appeared to concede that the police response procedures give rise to a duty to remain at the scene for at least some period of time.

" 'The Court: The procedures do require [the police] to remain at the scene for some time?

" 'The defendant: Yes. . . .

" 'The Court: Would you agree [the police] have to stay for a certain period of time?

" 'The Defendant: Yes, they do have to stay for a certain period of time. Of course, it's difficult to put a number on that . . . .'

"It is unclear, however, whether the defendant's statement that the police officers had to remain at the scene for some duration was a concession that they had to remain at the scene after they determined there was probable cause for arrest as opposed to after the police initially responded to the scene." See footnote 14 of the majority opinion. I respectfully disagree with this conclusion. In my view, upon reviewing the police response procedures, it is very clear that the police were required to stay after they had made a probable cause determination for arrest and were unable to make the arrest. I believe this fact was conceded by defendant's counsel.[1] If, in fact, there was a concession by the defendant, there can be no question that there was a ministerial duty imposed on the police to remain at the scene for a reasonable period of time. The premise that counsel for the defendant would admit that the police had a duty to stay at the house indicates the mandatory nature of this requirement. This conclusion runs contrary to the express decisions of both the Appellate Court and the trial court. Even if there is disagreement on this issue, its very determination should be made in the trial court, not in this court, when we are examining issues not considered by the trial court.

Third, as discussed later in this dissent, the police had a ministerial duty to remain at the house. The manner in which they performed that duty was discretionary. Perhaps, they could have chosen to post a guard at the front of the house while the other officer applied for the warrant. Perhaps, they could have remained in the same room with the family. Perhaps, they could have asked for backup and post guards at both entrances to the house or remain in the yard. It would not matter in terms of the execution of the ministerial duty. The

point remains that they had a mandatory duty to remain at the house which unquestionably constituted a ministerial duty. Therefore, the suit was properly before the trial court and should not have been dismissed. The majority suggests that because the police response procedures contain a reasonableness clause, a discretionary act is created and not a ministerial duty. This is the precise point at which I part ways with the majority. The duty to stay, in my view, was ministerial. The manner in which they choose to stay was discretionary.

Although police officers, and police departments, are typically protected by discretionary act immunity, the mere status of a defendant as a police officer does not itself impart a cloak of immunity. The policy behind discretionary act immunity for police officers is based on the desire to encourage police officers to use their discretion in the performance of their typical duties. "Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." (Internal quotation marks omitted.) *Soderlund* v. *Merrigan*, 110 Conn. App. 389, 395, 955 A.2d 107 (2008). "Police officers are protected by discretionary act immunity when they perform the typical functions of a police officer." Id., 400. Thus, in *Soderlund*, the Appellate Court held that the police officer's failure to vacate a warrant pursuant to a court order was a ministerial duty and "[the police officer] should have taken steps to vacate the warrant from the computer system because it was at the direction of the court. It does not matter how she performed this duty, but she was required to vacate the warrant." Id. Therefore, the Appellate Court reversed the summary judgment entered by the trial court.

However, under the common law, "[g]enerally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty [that] is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 306, 999 A.2d 700 (2010). "Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint . . . [that] [t]he determination of whether an act or omission is discretionary in nature and, thus, whether

governmental immunity may be successfully invoked pursuant to . . . § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Footnote omitted; internal quotation marks omitted.) Id., 307–308. In my view, the police were under a ministerial duty to stay at the household. The manner in which they performed this duty and the length of time they stayed was discretionary. Therefore, the trial court improperly granted summary judgment in favor of the defendant.Paragraph 17 of the plaintiff's complaint alleges in relevant part as follows: "The losses suffered by the plaintiff, as hereinafter alleged, are due to the negligence and carelessness of the defendant, its agents, servants or employees, in one or more of the following ways . . . (d) in that they left the scene before the likelihood of further imminent violence had been eliminated, in violation of the [p]olice [r]esponse [p]rocedures." The plaintiff relies on § III (B) (4) of the police response procedures entitled "Police Response to Cases of Family Violence," which provides as follows: "Victim Safety: In the event that an arrest is not made, [Public Acts 1986, No. 86-337] requires that officers shall remain at the scene for a reasonable time until, in the reasonable [judgment] of the officer, the likelihood of further imminent violence has been eliminated." Further, § III (B) (5) of the police response procedures, which deal with temporary restraining orders and protective orders, provides in relevant part: "c. Officers shall arrest when there is probable cause to believe that the subject of the [t]emporary [r]estraining or [p]rotective [o]rder has violated the order. d. Violators shall be arrested for a violation of the terms of the order which may include criminal trespass in the first degree [General Statutes § 53a-107] and any other violations charged. e. If the violator is not present when the officer arrives, the officer shall investigate the incident and, if probable cause exists, the officer will apply for an arrest warrant." Moreover, § II (B) of the police response procedures provides the following relevant definitions: "[1] '[F]amily violence'—means an incident resulting in physical harm, bodily injury or assault . . . between family or household members. . . . [2] '[F]amily/household members'—means spouse, parents, persons eighteen years of age or older related by blood or marriage and persons presently residing together or who have resided together, and persons who have a child in common regardless of whether they are or have been married or have lived together at any time. [3] '[F]amily violence crime'—means a crime defined in [General Statutes § 53a-24] which, in addition to its other elements, contains as an element thereof an act of family violence to a family member and shall not include acts

by parents or guardians disciplining minor children unless such acts constitute abuse."

In my view, the trial court and Appellate Court were correct that the actions of the police officers were discretionary up to the point that the police determined that an arrest should be made, but could not be accomplished at that time due to the inability of the police to locate the person who had violated the restraining order. Neither court, however, evaluated the separate ministerial duty to "remain at the scene for a reasonable time." Id., § III (B) (4). This duty commenced after the police officers had conducted their investigation and determined whether an arrest should take place. In *Bonington* v. *Westport*, supra, 297 Conn. 319, we held that "even when the duty to respond to a violation is ministerial because the specific response is mandated, the predicate act—determining whether a violation of law exists—generally is deemed to be a discretionary act." (Emphasis omitted.) In this case, the officers determined that there was probable cause for an arrest, but they could not find the perpetrator. In this regard, I find the case of *Wright* v. *Brown*, 167 Conn. 464, 356 A.2d 176 (1975), particularly instructive. In that case, a state statute required a town dog warden to quarantine a dog for a period of fourteen days after the dog had bitten someone. Id., 466. The dog warden, after an initial quarantine of several days, had released the dog prior to the fourteen day period and, thereafter, it bit another person. Id. We held that "[i]n this case, the dog warden was charged under [General Statutes] § 22-358 with the duty of quarantining the dog for fourteen days once she found that the dog had bitten a person who was not upon the premises of the owner or keeper of the dog. While the determination of that state of facts involved the exercise of judgment, the subsequent duty to quarantine for fourteen days was mandatory and, therefore, ministerial." Id., 471–72. Likewise, in this case, the actions of the police in making a determination that probable cause existed for an arrest and that the perpetrator could not be found, in my view, were the predicate discretionary acts. However, at that point, the language of § III (B) (4) of the police response procedures controlled, requiring that the "officers shall remain at the scene for a reasonable time until, in the reasonable [judgment] of the officer, the likelihood of further imminent violence has been eliminated." In this case, the police were required to remain at the scene. There was no discretion involved in that mandatory act. The defendant's counsel conceded this fact at oral argument. It is a classic ministerial duty. It is equally clear, however, from the defendant's answer to paragraph 15, that the police did not remain at the scene for any length of time, let alone a reasonable length of time. The facts recited by the majority would create, in my view, an issue for the trier of fact, at the time of trial. Therefore, since I would conclude that there was

a ministerial duty to remain at the scene for some period of time, and that the complaint and answer, when read together, establish that the duty was breached, summary judgment is inappropriate in this case. "[M]unicipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Internal quotation marks omitted.) *Soderlund* v. *Merrigan*, supra, 110 Conn. App. 395. In the present case, the police officers, or at least one of them, as established by their own regulations, were under a ministerial duty to remain at the scene for some period of time. They, arguably, did not perform this duty. The matter then becomes an issue of fact for a decision by the fact finder. I would reverse the summary judgment entered by the trial court and affirmed by the Appellate Court, and remand the matter for further proceedings. Therefore, I respectfully dissent.

[1] At oral argument, the defendant conceded that such a duty exists. Although the majority concludes that "[i]t is unclear whether . . . the defendant's statement that the police officers had to remain at the scene for some duration was a concession that they had to remain at the scene after they determined there was probable cause for arrest as opposed to after the police initially responded to the scene." See footnote 14 of the majority opinion. I find the defendant's concession at oral argument to be far less ambiguous. The relevant portion of the oral argument is as follows:

"The Court: The procedures do require [the police officers] to remain at the scene for some time?

"The Defendant: Yes.

"The Court: Do we know from this record whether they remained at the scene?

"The Defendant: Well, we do know from the record that [the police officers] took enough information from [the decedent] and from Williams as to what happened that day, there [is] a three page report, they must have stayed for some period of time to get that information.

"The Court: But they first of all have to determine whether or not there is probable cause for an arrest, I would think that [the police officers] would have to take information for that, *but after they determined whether or not to make an arrest, it would seem that there is some requirement that they have to stay at the scene. And do we know whether they stayed at the scene here?* Other than asking for information?

"The Defendant: I guess it's not clear as to how long they were there.

"The Court: *Would you agree they have to stay for a certain period of time?*

"The Defendant: *Yes, they do have to stay for a certain period of time.* Of course, it's difficult to put a number on that, whether it be an hour, two hours, three hours, twenty-four hours." (Emphasis added.)

In my opinion, it is clear from the transcript that the defendant conceded that officers *do* have a ministerial duty to remain at the scene for at least some period of time after a probable cause determination has been made to arrest a given suspect for a family violence crime and the arrest has not yet been made. At the very least, it is quite clear, both from the statements made by the plaintiff and the defendant in their pleadings and at oral argument before this court, that the record is unclear as to whether the police "remained" at the scene following the determination of probable cause, and as to whether the duty to "remain" is ministerial or discretionary in nature. As a result, I believe that these questions should be resolved by a trier of fact. See *Tango* v. *New Haven*, 173 Conn. 203, 205–206, 377 A.2d 284 (1977).