ORVILLE COLEY, ADMINISTRATOR (ESTATE
OF LORNA COLEY) *v.* CITY
OF HARTFORD
(AC 33904)

Alvord, Sheldon and West, Js.

---

Argued September 20, 2012—officially released January 22, 2013

*Hugh D. Hughes*, with whom, on the brief, was *William F. Gallagher*, for the appellant (plaintiff).

*Jonathan H. Beamon*, senior assistant corporation counsel, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Orville Coley, administrator of the estate of Lorna Coley,[1] appeals from the summary judgment rendered by the trial court in favor of the defendant, the city of Hartford (city). He claims that the court improperly concluded that there was no genuine issue of material fact as to whether certain police officers' response to a report of family violence constituted a discretionary, as opposed to a ministerial, act. We affirm the judgment of the trial court.

The following facts, viewed in the light most favorable to the plaintiff,[2] are relevant to our disposition of the plaintiff's appeal. On November 5, 2007, at approximately 8:39 p.m., Hartford police officers G. Fancher and Z. Freeto were dispatched to respond to a complaint of domestic violence at 47 Bolton Street. The complaint had been made by Jahmesha Williams, one of the residents of 47 Bolton Street, who had called the police because the father of her child, Gerard Chapdelaine, had come to her house and attempted to gain entry and, having failed, brandished a revolver and threatened her life.

---

[1] Throughout this opinion, Orville Coley will be referred to as the plaintiff, and Lorna Coley will be referred to as Coley.

[2] See *Martinelli* v. *Fusi*, 290 Conn. 347, 350, 963 A.2d 640 (2009) ("[t]he record [is] viewed in the light most favorable to the nonmoving plaintiff for purposes of reviewing the trial court's grant of summary judgment").

Williams lived at 47 Bolton Street with her son, a friend and Williams' mother, Coley. On the evening in question, Coley had arrived at the house in her car and observed Chapdelaine threatening Williams' life and brandishing a firearm in the front yard. Coley told Chapdelaine that she would call the police if he did not leave. He responded, "call the cops," and she drove away. By the time she returned, officers Fancher and Freeto had arrived at 47 Bolton Street in response to Williams' call, but Chapdelaine was no longer present. The officers spoke with neighbors and went to Chapdelaine's residence at 51 Bolton Street, but they were unable to find him. Williams informed the officers that Chapdelaine's car was illegally parked at 55 Bolton Street, and officers ticketed the vehicle and had it towed. The officers also learned that Williams had a protective order against Chapdelaine prohibiting him from threatening or harassing her, entering her dwelling or having any other contact with her. Hartford police were aware of the protective order and previously had responded to incidents of domestic violence between Chapdelaine and Williams at 47 Bolton Street.

Unable to locate Chapdelaine, and aware that he had allegedly committed a family violence crime by violating a protective order, Fancher and Freeto left Bolton Street to prepare an arrest warrant. Approximately three hours later, at about 12:05 a.m., officers were again dispatched to 47 Bolton Street, this time in response to a report that a male was attempting to force entry into the residence. The police determined that the two reported incidents at 47 Bolton Street were related, and, upon arrival at the scene, heard screams coming from the second floor. After setting up a perimeter and entering the residence, police discovered that Coley had been shot and killed.

On July 9, 2008, the plaintiff was appointed as the administrator of the estate of his sister, Coley, and he

continues to act in that capacity. On November 17, 2009, the plaintiff filed a lawsuit against the city, in his capacity as administrator, alleging that the city's police officers were negligent in their failure to (1) arrest Chapdelaine in violation of General Statutes § 46b-38b (a); (2) remain at the scene for a reasonable amount of time to ensure the likelihood of further imminent violence had been eliminated in violation of § 46b-38b (d); and (3) follow the Hartford police department's internal police response procedures for responding to cases of family violence (police response procedures).[3] The plaintiff contends that, pursuant to General Statutes § 52-557n (a) (1) (A), the city is liable for the damages suffered by Coley due to the negligent acts of Fancher and Freeto. The city raised two special defenses in its answer: (1) the city is entitled to governmental immunity under § 52-557n (a) (2) (B), and (2) any injuries claimed by Coley were the result of her own negligence. The city then filed a motion for summary judgment on the basis of the governmental immunity provided under § 52-557n (a) (2) (B). The court rendered summary judgment in favor of the city, finding that the acts undertaken by the police were discretionary, not ministerial, and that the exception to municipal immunity for discretionary acts when an identifiable person is in imminent harm was not applicable in this case.[4] This appeal followed.

On appeal, the plaintiff's sole claim is that there is a genuine issue of material fact as to whether Fancher

[3] The plaintiff's complaint alleged seven separate acts of negligence, each of which may be categorized within one of these three generalized allegations.

[4] The order rendering summary judgment on behalf of the defendant states: "Under [§] 52-557n (a) (2) (B), the city is not liable for discretionary acts and the officers' decision to try and find and arrest the domestic violence perpetrator and eventual shooter, was a discretionary act. The mother, shooting victim, was not an identifiable victim subject to imminent harm, the daughter was. [Section] 46b-38b (d) requires the officers to exercise reasonable . . . judgment which makes it discretionary."

and Freeto had a ministerial or a discretionary duty to remain at 47 Bolton Street.[5] The plaintiff argues that § 46b-38b (d) and the city's police response procedures[6] imposed a ministerial duty upon the officers to stay at the scene for "a reasonable time until, in the reasonable judgment of the officer, the likelihood of further imminent violence has been eliminated." General Statutes § 46b-38b (d);[7] Hartford Police Department policy and procedure, police response to cases of family violence, No. 7-40, effective October 1, 1986. The city contends that the trial court correctly determined that the discretionary act immunity codified in § 52-557n shields the city from liability. We agree with the city.

"We begin by setting forth the appropriate standard of review. Because the present case was disposed of by way of summary judgment, we first address the appropriate framework for appellate review of a summary judgment determination. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to

[5] The plaintiff contends that the city owed Coley a duty because the officers' acts were ministerial. He does not challenge on appeal the court's judgment that the officers' acts did not fall within the identifiable person in imminent harm exception to discretionary act immunity. Furthermore, at oral argument before this court, the plaintiff conceded that the decision not to challenge on appeal the trial court's determination that the exception did not apply was because Coley would not qualify as an identifiable person under that exception to discretionary act immunity. We therefore address only the issue of whether the officers' acts created a ministerial or a discretionary duty.

[6] We review any allegations concerning compliance with the police response procedures pursuant to the police response procedures that were enacted on October 1, 1986, because those were the procedures in place on November 5, 2007. We note that those procedures subsequently have been amended.

[7] Although § 46b-38b (d) has been amended several times since the events giving rise to this appeal, because those changes have no bearing on the merits of this appeal, we refer to the current revision of the statute.

judgment as a matter of law." (Internal quotation marks omitted.) *Sokaitis* v. *Bakaysa*, 293 Conn. 17, 21–22, 975 A.2d 51 (2009). "In reviewing a trial court's ruling on a motion for summary judgment when the material facts are undisputed, we must decide whether the trial court erred in concluding that the moving party was entitled to judgment as a matter of law." (Internal quotation marks omitted.) *McAuley* v. *Southington Savings Bank*, 69 Conn. App. 813, 818, 796 A.2d 1250, cert. denied, 261 Conn. 903, 802 A.2d 853 (2002). "Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Sokaitis* v. *Bakaysa*, supra, 22.

"Negligence is a breach of duty. . . . It is important to distinguish between the existence of a duty and the violation of that duty. . . . To sustain a cause of action, the court must determine whether the defendant owed a duty to the plaintiff's decedent . . . . The existence of a duty is a question of law. . . . Only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Citations omitted; internal quotation marks omitted.) *Shore* v. *Stonington*, 187 Conn. 147, 151–52, 444 A.2d 1379 (1982). "The issue of governmental immunity is simply a question of the existence of a duty of care, and this court has approved the practice of deciding the issue of governmental immunity as a matter of law. . . .

"General Statutes § 52-557n abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages." *Doe* v. *Petersen*, 279 Conn. 607, 614, 903 A.2d 191 (2006). The first part of the statute provides for the possibility that a municipality may be liable for negligently performed ministerial acts by stating that "a political subdivision of the state *shall* be liable for damages to person or property caused by . . .

(A) [t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." (Emphasis added.) General Statutes § 52-557n (a) (1). The second part of the statute then distinguishes discretionary acts from those that are ministerial by stating that "a political subdivision of the state *shall not* be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Emphasis added.) General Statutes § 52-557n (a) (2). "Generally, liability may attach for a negligently performed ministerial act, but not for a negligently performed governmental or discretionary act."[8] *Kolaniak* v. *Board of Education*, 28 Conn. App. 277, 281, 610 A.2d 193 (1992).

"A municipality is immune from liability for the performance of . . . acts [that] are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the

---

[8] Governmental acts are those acts that are performed by a municipality where the purpose is to benefit the public rather than a specific individual. See *Gordon* v. *Housing Authority*, 208 Conn. 161, 167–68, 544 A.2d 1185 (1988). Some courts frame the question of whether an act is governmental in terms of the public duty doctrine, determining whether the municipality had a duty to the general public or a duty to a specific individual. See id., 169–70. "The public duty doctrine recognizes that a fundamental element of any negligence action is a duty owed by the defendant to the plaintiff. Thus for one to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general [i.e., a duty to all is a duty to no one]." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 335 n.13, 907 A.2d 1188 (2006). "[A]lthough the public duty doctrine provides the starting point of the analysis, distinctions between discretionary acts and ministerial acts are often controlling without regard to whether the duty is ascertained to be public or private." (Internal quotation marks omitted.) Id., 334–35.

propriety of the action." (Internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 167–68, 544 A.2d 1185 (1988). "The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 318, 907 A.2d 1188 (2006). In order to create a ministerial duty, there must be a "city charter provision, ordinance, regulation, rule, policy, or any other directive [compelling a municipal employee] to [act] in any prescribed manner." Id., 323.

While the threshold inquiry in determining whether a duty is ministerial or discretionary is whether there exists a directive compelling a municipality or its agent to act in a prescribed manner, the existence of such a directive alone is not necessarily sufficient to create a duty. For example, a directive can only create a duty to an individual if the individual is a member of the class of people the directive sought to protect. See *Ward* v. *Greene*, 267 Conn. 539, 548, 839 A.2d 1259 (2004) ("in determining whether a duty of care is owed to a specific individual under a statute, the threshold inquiry . . . is whether the individual is in the class of persons protected by the statute"). "In an action for neglect of duty it is not enough for the plaintiff to show that the defendant neglected a duty imposed by statute, and that he would not have been injured if the duty had been performed, but to entitle him to recover, he must further show that such duty was imposed for his benefit, or was one which the defendant owed to him for his protection and security, from the particular loss or injury of which he complains." (Internal quotation marks omitted.) Id., 550–51.

"[T]he great weight of authority [states] that the operation of a police department is a discretionary governmental function." *Gordon* v. *Bridgeport Housing*

*Authority,* supra, 208 Conn. 179. The plaintiff in this case attempts to circumvent that authority by relying on specific directives rather than general operating principles to form an argument that the city breached a duty to Coley. The plaintiff first relies on § 46b-38b (d), which commences by setting forth four measures that officers must take to assist the victim when responding to an incident of family violence. The plaintiff does not allege that the officers failed to comply with any of those directives. Instead, the plaintiff directs our attention to the provision stating that "[*i*]*n cases where the officer has determined that no cause exists for an arrest,* assistance shall include . . . (B) remaining at the scene for a reasonable time until, in the reasonable judgment of the officer, the likelihood of further imminent violence has been eliminated." (Emphasis added.) General Statutes § 46b-38b (d). The plaintiff argues that this part of the statute imposed a duty upon the officers to remain at the scene. We disagree. The condition precedent, that the officer determine there is no cause for arrest, did not occur in this case. In fact, it is undisputed that Fancher and Freeto determined that, due to a violation of a protective order, Chapdelaine should be arrested. They attempted to locate him, and when they could not find him at the scene, his residence or his vehicle, the officers left Bolton Street with the intention of obtaining an arrest warrant. Because the condition precedent did not occur, this subsection of the statute is wholly inapplicable, and therefore can not create either a ministerial or a discretionary duty.

The plaintiff next argues that a directive within the city's police response procedures created a ministerial duty owed to Coley.[9] Specifically, the plaintiff relies on part III, § 4, entitled "Victim Safety," which states in its

---

[9] At oral argument before this court, the plaintiff noted that the police response procedures were promulgated under statutory mandate. See General Statutes § 46b-38b (e).

entirety: "In the event that an arrest is not made, [Public Acts 1986, No. 86-337 (P.A. 86-337)] requires that officers shall remain at the scene for a reasonable time until, in the reasonable judgment of the officer, the likelihood of further imminent violence has been eliminated." The plaintiff contends that this directive creates a ministerial duty for the officer to remain at the scene for a reasonable time. Furthermore, the plaintiff argues that the determination of whether the officer remained for a reasonable time is based on an objective standard and requires a factual determination by a jury. The city contends that the use of the word "reasonable" within the directive renders the directive discretionary because it requires the officer to use personal judgment. Both of these arguments, however, presuppose that the police response procedures imposed some sort of duty upon the officers—either ministerial or discretionary—for the benefit of Coley. Before addressing what *type* of duty to Coley the police response procedures may have created, it is necessary to ascertain whether they imposed *any* duty as to Coley at all.

The undisputed facts reveal that any duty owed by the police under the police response procedures was owed to Williams, not to Coley. On November 5, 2007, police responded to the home of Williams and Coley at 47 Bolton Street because Chapdelaine was brandishing a firearm in the front yard. The police were aware that a protective order had been issued to Williams prohibiting Chapdelaine from threatening or harassing her, entering her dwelling, or having any other contact with her. In fact, the police had been dispatched previously to the same address to respond to domestic disturbances between Chapdelaine and Williams. The 8:39 p.m. police response to 47 Bolton Street was a family violence matter because of the relationship between Williams and Chapdelaine and the outstanding

protective order in which Williams was the named victim.

The directive in question, found beneath the heading "Victim Safety," was promulgated to ensure the safety of victims. The directive makes reference to P.A. 86-337, entitled "An Act Concerning Family Violence Prevention and Response." "The legislative history of [P.A. 86-337] makes clear that its primary purpose was to implement a comprehensive system that would most effectively intervene in instances of domestic violence to protect victims from further harm . . . creating many procedural safeguards and services, both for victims of family violence and offenders, that had not before been available in this state." *State* v. *Fernando A.*, 294 Conn. 1, 53–54, 981 A.2d 427 (2009). Any duty created through this statutory scheme would therefore be owed to the victim of the family violence.[10] In this case that victim was Williams, not Coley. Because no directive created any duty to Coley, the acts undertaken by police officers on November 5, 2007, cannot serve

---

[10] Even if P.A. 86-337 could somehow be construed to have imposed a duty upon officers Fancher and Freeto to remain at the scene on the day in question for the personal benefit of Coley, the language of the act expressly provides that the nature and extent of any such duty would necessarily have required the exercise of judgment and discretion by the officers. The act expressly required any officer not making an arrest at the scene of a domestic violence incident to remain at the scene "for a reasonable time until in the reasonable judgment of the officer the likelihood of further imminent violence has been eliminated." P.A. 86-337, § 2 (d). Patently, an officer's judgment as to the likelihood of further imminent violence at the scene of a domestic incident requires the officer to draw, among other things, upon both his specific knowledge of the recent incident and the parties involved in it, and his general familiarity with patterns of domestic violence. Such considerations may lead officers with different training and experience to reach a wide range of reasonable conclusions rather than compelling them to reach a single, unavoidable conclusion dictating a clear course of action with fixed parameters that no officer would have had the discretion not to take. Such a duty is therefore not a ministerial duty, for violation of which a municipal official lacks qualified governmental immunity, and thus may lawfully be sued.

as a basis for imposing liability upon them in connection with Coley's death.

The judgment is affirmed.

In this opinion the other judges concurred.