******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ORVILLE COLEY, ADMINISTRATOR (ESTATE OF
LORNA COLEY) *v*. CITY OF HARTFORD
(SC 19129)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

Argued February 21—officially released June 10, 2014

*Hugh D. Hughes*, with whom, on the brief, was *William F. Gallagher*, for the appellant (plaintiff).

*Jonathan H. Beamon*, senior assistant corporation counsel, for the appellee (defendant).

*Opinion*

ROGERS, C. J. This appeal requires us to determine the scope of governmental immunity that is afforded to a city that has been sued for allegedly negligent conduct in connection with its police department's response to a report of domestic violence. The plaintiff, Orville Coley, the administrator of the estate of Lorna Coley (decedent), appeals from the judgment of the Appellate Court affirming the trial court's summary judgment rendered in favor of the defendant, the city of Hartford. *Coley* v. *Hartford*, 140 Conn. App. 315, 327, 59 A.3d 811 (2013). The plaintiff brought this wrongful death action after the decedent was shot and killed after police responded to a report of domestic violence at the apartment where the decedent resided with her daughter, Jahmesha Williams. The plaintiff alleges, inter alia, that the police were negligent in failing to remain at the scene for a reasonable amount of time until the likelihood of imminent violence had been eliminated, in violation of the duty allegedly imposed pursuant to General Statutes § 46b-38b[1] and the Hartford Police Department Policy and Procedure entitled "Police Response to Cases of Family Violence" (police response procedures). See Hartford Police Dept. Policy and Procedure, No. 7-40 (October 1, 1986).[2] Although the plaintiff raises several issues on appeal, the dispositive issue is whether the Appellate Court properly determined that any duty to remain at the scene that was allegedly owed to the plaintiff's decedent was discretionary.[3] We conclude that any such duty was discretionary and, therefore, that the defendant is entitled to immunity pursuant to General Statutes § 52-557n (a) (2) (B).[4] Accordingly, we affirm the judgment of the Appellate Court.

The following uncontested facts and procedural history are relevant to our disposition of this appeal.[5] "On November 5, 2007, at approximately 8:39 p.m., Hartford police officers [Garrett] Fancher and [Zachary] Freeto were dispatched to respond to a complaint of domestic violence at 47 Bolton Street. The complaint had been made by [Williams], one of the residents of 47 Bolton Street, who had called the police because the father of her child, Gerard Chapdelaine, had come to her house and attempted to gain entry and, having failed, brandished a revolver and threatened her life.

"Williams lived at 47 Bolton Street with her son, a friend and Williams' mother, [the decedent]. On the evening in question, [the decedent] had arrived at the house in her car and observed Chapdelaine threatening Williams' life and brandishing a firearm in the front yard. [The decedent] told Chapdelaine that she would call the police if he did not leave. He responded, 'call the cops,' and [the decedent] drove away. By the time she returned, [O]fficers Fancher and Freeto had arrived at 47 Bolton Street in response to Williams' call, but

Chapdelaine was no longer present. The officers spoke with neighbors and went to Chapdelaine's residence at 51 Bolton Street, but they were unable to find him. Williams informed the officers that Chapdelaine's car was illegally parked at 55 Bolton Street, and officers ticketed the vehicle and had it towed. The officers also learned that Williams had a protective order against Chapdelaine prohibiting him from threatening or harassing her, entering her dwelling or having any other contact with her. Hartford police . . . previously had responded to incidents of domestic violence between Chapdelaine and Williams at 47 Bolton Street.

"Unable to locate Chapdelaine, and aware that he had allegedly committed a family violence crime by violating a protective order, Fancher and Freeto left . . . to prepare an arrest warrant." *Coley* v. *Hartford*, supra, 140 Conn. App. 317–18. Prior to leaving the scene, Officers Fancher and Freeto contacted the Interval House, a local domestic violence shelter, and spoke with a representative on Williams' behalf. The officers also provided Williams with a victim services card containing additional resources regarding domestic violence.

"Approximately three hours later, at about 12:05 a.m., officers were again dispatched to 47 Bolton Street, this time in response to a report that a male was attempting to force entry into the residence. The police determined that the two reported incidents at 47 Bolton Street were related, and, upon arrival at the scene, heard screams coming from the second floor. After setting up a perimeter and entering the residence, police discovered that [the decedent] had been shot and killed."[6] Id., 318.

The plaintiff brought this wrongful death action alleging that the defendant's police officers were negligent in responding to the domestic violence incident at 47 Bolton Street. Specifically, the plaintiff alleged, inter alia, that the police officers: "failed to arrest . . . Chapdelaine as required by . . . § 46b-38b (a)"; "failed to arrest . . . Chapdelaine for violating a protective order as required by the police response procedures"; "left the scene before the likelihood of further imminent violence had been eliminated, in violation of . . . § 46b-38b (d)"; and "left the scene before the likelihood of further imminent violence had been eliminated, in violation of the police response procedures." The defendant asserted as a special defense that it is entitled to governmental immunity pursuant to § 52-557n and it subsequently filed a motion for summary judgment on that ground. The trial court, *Rittenband, J.*, rendered summary judgment in favor of the defendant, concluding that the police officers' actions were discretionary, not ministerial, and that the identifiable person-imminent harm exception to governmental immunity for discretionary acts[7] does not apply in the present case. The plaintiff appealed from the trial court's decision to the

Appellate Court.[8]

In the Appellate Court, the plaintiff argued that the trial court improperly rendered summary judgment in the defendant's favor because a genuine issue of material fact existed as to whether police officers had a ministerial duty, pursuant to § 46b-38b and the police response procedures, to remain at Williams' residence for "a reasonable time until, in the reasonable judgment of the officer, the likelihood of further imminent violence [had] been eliminated." (Internal quotation marks omitted.) *Coley* v. *Hartford*, supra, 140 Conn. App. 319–20. The Appellate Court disagreed for three reasons. First, the Appellate Court concluded that § 46b-38b (d) does not apply in the present case because that statute requires police officers to remain at the scene only when, unlike in the present case, there is no probable cause for arrest. Id., 324. Second, the Appellate Court concluded that any duty arising under the police response procedures was owed to Williams, the victim of domestic violence, and not to the decedent. Id., 326. Finally, the Appellate Court determined that, even if it were to assume that the defendant owed a duty to the decedent to remain at the scene under the police response procedures, the duty was discretionary and, therefore, the defendant is entitled to governmental immunity. Id., 326 n.10. For these reasons, the Appellate Court affirmed the trial court's summary judgment in favor of the defendant. This certified appeal followed.

On appeal, the plaintiff argues that the Appellate Court improperly affirmed the trial court's summary judgment for the defendant. Although the plaintiff challenges each of the three grounds for the Appellate Court's decision, we focus our inquiry on the plaintiff's claim that the police response procedures gave rise to a ministerial duty to remain at the scene in the present case. With respect to this claim, the plaintiff argues that the police response procedures are broader than § 46b-38b (d) because the procedures require law enforcement personnel to remain at the scene for a reasonable time in the event an arrest is not made. See footnote 2 of this opinion. The plaintiff contends that the Appellate Court incorrectly concluded that the duty to remain at the scene under the police response procedures was discretionary rather than ministerial.

In response, the defendant argues that the Appellate Court properly affirmed the trial court's summary judgment in favor of the defendant. With respect to the plaintiff's claim regarding the police response procedures, the defendant argues that, even if we were to assume that there was a duty owed to the decedent under the police response procedures, it is apparent from the allegations in the complaint that the duty to remain at the scene was discretionary. The defendant contends, therefore, that it is immune from liability for its allegedly negligent discretionary acts under § 52-

557n (a) (2) (B).

As a preliminary matter, we agree with the plaintiff that the obligation to remain at the scene in the event that an arrest is not made under the police response procedures, on its face, is broader than the obligation to remain at the scene under the statute, which gives rise to this obligation only when "no cause exists for an arrest . . . ." General Statutes § 46b-38b (d); see footnotes 1 and 2 of this opinion. Because the police officers determined that there was probable cause to arrest Chapdelaine, and an arrest was not in fact made, we conclude that the police response procedures apply in the present case.[9] The dispositive issue in this appeal, therefore, is whether the duty to remain at the scene was discretionary or ministerial. See *Grignano* v. *Milford*, 106 Conn. App. 648, 659–60, 943 A.2d 507 (2008) (concluding that defendant's duty to perform reasonable inspections of premises under town ordinance was discretionary because ordinance did not prescribe precise manner for inspection, but duty to warn upon making discretionary determination of hazardous condition was ministerial because ordinance prescribed manner in which warning should be issued); accord *Violano* v. *Fernandez*, 280 Conn. 310, 323, 907 A.2d 1188 (2006) (ministerial duty may be created by city charter provision, ordinance, regulation, rule, policy, or other directive). Because we determine that the duty to remain at the scene was discretionary and, therefore, that the defendant is entitled to governmental immunity, we will assume for the purposes of this appeal only that this duty was owed to the decedent.

We begin with the applicable standard of review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary. . . . [T]he ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [where the] resolution of those factual issues is properly left to the jury." (Citations omitted; internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 305–306, 999 A.2d 700 (2010). Because the material facts in the present case are undisputed; see footnote 5 of this opinion; we exercise plenary review over the trial court's determination that the defendant is entitled to qualified immunity as a matter of law. See *Purzycki* v. *Fairfield*, 244 Conn. 101, 108 n.4, 708 A.2d 937 (1998) (exercising plenary review over availability of qualified immunity because material facts were undisputed).

Certain principles governing the scope of qualified

immunity inform our disposition of this appeal. "[Section] 52-557n abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages. . . . One such circumstance is a negligent act or omission of a municipal officer acting within the scope of his or her employment or official duties. . . . [Section] 52-557n (a) (2) (B), however, explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

"Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society."[10] (Citations omitted; footnote omitted; internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 614, 903 A.2d 191 (2006). Therefore, "[d]iscretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officials and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." (Internal quotation marks omitted.) Id., 615. "The hallmark of a discretionary act is that it requires the exercise of judgment." (Internal quotation marks omitted.) *Bonington* v. *Westport*, supra, 297 Conn. 306. "In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Doe* v. *Petersen*, supra, 615.

"Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint . . . [that the nature of the duty] and, thus, whether governmental immunity may be successfully invoked pursuant to . . . § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Footnote omitted; internal quotation marks omitted.) *Bonington* v. *Westport*, supra, 297 Conn. 307–308.

With these principles in mind, we turn to the dispositive issue in the present case. The plaintiff argues that the Appellate Court improperly concluded that any duty

to remain at the scene that the defendant allegedly owed to the decedent under the police response procedures was discretionary.[11] Contrary to the Appellate Court's determination, the plaintiff contends that the mandatory language in § III (B) (4) of the police response procedures, specifically the phrase "shall remain," renders the duty to remain at the scene ministerial. The plaintiff maintains that the police response procedures were enacted to curtail law enforcement discretion and, to that end, the procedures mandate that police officers remain at the scene of a domestic violence incident when an arrest is not made. Insofar as the police response procedures provide that an officer shall remain at the scene "for a reasonable time until, in the reasonable judgement of the officer, the likelihood of further imminent violence has been eliminated"; Hartford Police Dept. Policy and Procedure, supra, § III (B) (4); the plaintiff argues that "reasonable" is an objective standard of reasonableness that creates an issue for the trier of fact.

The defendant, by contrast, contends that the police response procedures at issue in the present case necessarily require the exercise of judgment and, therefore, are discretionary. Specifically, the defendant argues that the police response procedures vest police officers with discretion to determine how long to remain at the scene, that is, what constitutes a "*reasonable time*" until "*in the reasonable judgement of the officer*, the likelihood of further imminent violence has been eliminated." (Emphasis added.) Id.; General Statutes § 46b-38b (d). Because the defendant's allegedly negligent acts in "le[aving] the scene before the likelihood of further violence had been eliminated" necessarily involved the exercise of judgment or discretion, the defendant argues that it is entitled to discretionary act immunity pursuant § 52-557n (a) (2) (B). We agree with the defendant.

We begin by observing the broad scope of governmental immunity that is traditionally afforded to the actions of municipal police departments. "[I]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality. . . . [Accordingly] [t]he failure to provide, or the inadequacy of, police protection usually does not give rise to a cause of action in tort against a city." (Internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 180, 544 A.2d 1185 (1988). In *Gordon*, we concluded that the city was immune from liability for injuries stemming from an alleged shortage of police patrols because "the general deployment of police officers is a discretionary governmental action as a matter of law." Id. "[B]ecause a police chief's authority to assign his officers to particular duties is deemed a matter that concerns the public safety, he may not be

deprived of his power to exercise his own discretion and judgment as to the number, qualifications and identity of officers needed for particular situations at any given time . . . ." (Internal quotation marks omitted.) Id. Although the issue in the present case does not concern the deployment of police officers generally, but rather the defendant's alleged failure to adhere to specific police response procedures, we find *Gordon* instructive because it underscores the considerable discretion inherent in law enforcement's response to an infinite array of situations implicating public safety on a daily basis.

We now turn to the facts in the present case. "Determining whether it is apparent on the face of the complaint that the acts complained of are discretionary requires an examination of the nature of the alleged acts or omissions." *Violano* v. *Fernandez*, supra, 280 Conn. 322. In his complaint, the plaintiff alleges that the defendant was negligent in leaving the scene of the domestic violence dispute, 47 Bolton Street, before the likelihood of further violence had been eliminated, allegedly in violation of the police response procedures. Although the complaint characterizes the police officers' actions as ministerial in nature, that is, failing to remain at the scene in violation of a clear policy directive, the police response procedures cited in the complaint required the exercise of discretion. Specifically, the police response procedures provide that "[i]n the event that an arrest is not made . . . officers shall remain at the scene for a reasonable time until, in the reasonable judgement of the officer, the likelihood of further imminent violence has been eliminated." Hartford Police Dept. Policy and Procedure, supra, § III (B) (4). In actuality, then, the gravamen of the plaintiff's allegations is that the defendant failed to remain at the scene for a *reasonable time* until, in the *reasonable judgment of the police officer*, the likelihood of further imminent violence had been eliminated.

It is difficult to conceive of policy language that could more clearly contemplate the exercise of judgment by a municipal employee than is contemplated by the police response procedures in the present case. At a minimum, the plaintiff would have this court ignore the police response procedures' explicit reference to the "reasonable judgement of the officer . . . ." Id. In no uncertain terms, the policy requires police officers to exercise their judgment in evaluating the likelihood of imminent violence. The plaintiff's strained interpretation also disregards the discretion inherent in the determination of what amounts to a "reasonable time" under the police response procedures. In fact, the police response procedures define "reasonable time" by reference to the police officer's discretion; it is the amount of time until the likelihood of further imminent violence has been eliminated *as determined according to the reasonable judgment of the police officer.* See id.

Thus, the police response procedures in the present case explicitly require the police officer's judgment in evaluating the circumstances in a given situation of domestic violence. Because the policy language makes the manner of performance expressly contingent upon the police officer's discretion, it cannot be said that the alleged acts were to be "performed in a prescribed manner without the exercise of judgment . . . ." (Internal quotation marks omitted.) *Doe* v. *Petersen*, supra, 279 Conn. 615. We conclude, therefore, that the defendant's allegedly negligent acts were discretionary.[12]

The plaintiff also claimed at oral argument that, even conceding that the police response procedures are discretionary with respect to what constitutes a reasonable time,[13] the defendant was nonetheless required to remain at the scene for *some* time once police officers determined that there was probable cause for arrest and an arrest was not made. The plaintiff's claim centers on the allegedly mandatory nature of the word "shall" in § III (B) (4) of the police response procedures, which provides that "[i]n the event that an arrest is not made . . . officers *shall* remain at the scene for a reasonable time . . . ." (Emphasis added.) Thus, as we understand the plaintiff's argument, he contends that the defendant had a ministerial duty to remain at the scene for *some* amount of time once there was probable cause to arrest Chapdelaine.[14] We disagree.

Contrary to the plaintiff's contention, the word "shall" does not necessarily give rise to a ministerial duty to remain at the scene when the policy language, read in its entirety, clearly relies upon the police officer's discretion in deciding how to perform the allegedly ministerial act of remaining at the scene. "The mere fact that a statute uses the word 'shall' in prescribing the function of a government entity or officer should not be assumed to render the function necessarily obligatory in the sense of removing the discretionary nature of the function." 57 Am. Jur. 2d 113, Municipal, County, School, and State Tort Liability § 82 (2001). To illustrate how mandatory language does not necessarily render a duty ministerial as opposed to discretionary, we turn to our Appellate Court's decision in *Mills* v. *The Solution, LLC*, 138 Conn. App. 40, 51, 50 A.3d 381, cert. denied, 307 Conn. 928, 55 A.3d 570 (2012).

In *Mills*, the plaintiff appealed from the trial court's summary judgment rendered in favor of the defendant, a municipal police department, on the ground of governmental immunity for its allegedly negligent failure to provide police protection at a carnival where the plaintiff's decedent was fatally shot. Id., 40, 43. Specifically, the plaintiff argued that the defendant had a ministerial duty to provide the police protection that it determined, in its discretion, was necessary pursuant to the statute governing police protection at places of public amusement. Id., 51. General Statutes § 7-284 provides in rele-

vant part that "[w]hen police protection is necessary or required at any . . . place of public amusement . . . *the amount of such protection necessary shall be determined* and *shall be furnished* by (1) the chief . . . of the police department . . . ." (Emphasis added.) While the plaintiff did not dispute that § 7-284 affords the defendant discretion to determine whether police protection is necessary and, if so, the amount of such protection, the plaintiff argued that "once the chief of police, in his or her discretion, determines that police protection is necessary, the chief of police then has a ministerial duty to furnish such protection." *Mills* v. *The Solution, LLC*, supra, 138 Conn. App. 50–51.

Like the plaintiff in the present case, the plaintiff in *Mills* argued that the mandatory nature of the word "shall" rendered the duty to furnish necessary police protection ministerial. Id., 51. The Appellate Court rejected this argument: "We disagree with the plaintiff that the word 'shall' is sufficient to convert what is otherwise a discretionary act into a ministerial duty where the text of the statute leaves to the discretion of the police official how to perform the function . . . ." Id. Similarly, in the present case, the police response procedures leave to the discretion of the police officer how to perform the obligation to remain at the scene of a domestic violence crime. We find that the policy language vesting discretion with the police officer to determine what constitutes a reasonable time is inextricably intertwined with the policy language stating that the police officer "shall remain" at the scene. Accordingly, we decline the plaintiff's invitation to parse the policy language so as to create a ministerial duty to remain at the scene notwithstanding the discretionary performance of that duty.[15]

The facts in the present case are undeniably tragic, and, understandably, the parties are left questioning whether anything more could have been done to prevent the realities that unfolded. It is, however, precisely because it can always be alleged, in hindsight, that a public official's actions were deficient that we afford limited governmental liability for acts that necessarily entailed the exercise of discretion. "We do not think that the public interest is served by allowing a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty. Such discretion is no discretion at all." *Shore* v. *Stonington*, 187 Conn. 147, 157, 444 A.2d 1379 (1982); see *Doe* v. *Peterson*, supra, 279 Conn. 615 ("[d]iscretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury" [internal quotation marks omitted]); *Wadsworth* v. *Mid-*

*dletown*, 94 Conn. 435, 440, 109 A. 246 (1920) ("[t]imidity and doubt would govern [public officials'] performance of public duty if they acted in the consciousness that personal liability might follow, no matter how closely they followed their best discretion"). In short, the police officers' allegedly negligent acts in the present case required the exercise of discretion, and, accordingly, the defendant is immune from liability for its discretionary acts.

For the reasons set forth in this opinion, the Appellate Court properly determined that the duty to remain at the scene in the present case was discretionary. Accordingly, we conclude that the Appellate Court properly affirmed the trial court's decision rendering summary judgment in the defendant's favor on the ground that the defendant is entitled to immunity from liability pursuant to § 52-557n.

The judgment is affirmed.

In this opinion PALMER, ZARELLA, McDONALD, ESPINOSA and ROBINSON, Js., concurred.

[1] General Statutes § 46b-38b provides in relevant part: "(a) Whenever a peace officer determines upon speedy information that a family violence crime has been committed within such officer's jurisdiction, such officer shall arrest the person or persons suspected of its commission and charge such person or persons with the appropriate crime. . . .

"(d) It shall be the responsibility of the peace officer at the scene of a family violence incident to provide immediate assistance to the victim. . . . In cases where the officer has determined that no cause exists for an arrest, assistance shall include . . . (B) remaining at the scene for a reasonable time until, in the reasonable judgment of the officer, the likelihood of further imminent violence has been eliminated. . . ."

Although this statute has been revised since the events giving rise to this appeal; see, e.g., Public Acts 2010, No. 10-36, § 5; Public Acts 2011, No. 11-152, § 3; those revisions have no bearing on the merits of the present case. Accordingly, for purposes of convenience, we refer to the current revision of the statute.

[2] Specifically, the plaintiff relies on the portion of the police response procedures which provides: "In the event that an arrest is not made, [Public Acts 1986, No. 86-337, § 2, codified at General Statutes § 46b-38b] requires that officers shall remain at the scene for a reasonable time until, in the reasonable judgement of the officer, the likelihood of further imminent violence has been eliminated." Hartford Police Dept. Policy and Procedure, supra, § III (b) (4).

These procedures were promulgated under statutory mandate. See General Statutes § 46b-38b (e) (1) (B) ("[e]ach law enforcement agency shall develop, in conjunction with the Division of Criminal Justice, and implement specific operational guidelines for arrest policies in family violence incidents . . . [including] procedures for arrest and for victim assistance by peace officers"). We note that although § 46b-38b (e) has been amended since the police response procedures were implemented, the statutory authorization for implementing such procedures has remained unchanged. Accordingly, we refer to the current revision of § 46b-38b (e). Although the police response procedures have subsequently been amended since their enactment in 1986, we refer to the procedures that were in place on November 5, 2007, at the time of the alleged events in the present case.

[3] The three certified questions in this appeal are as follows: "(1) Did the Appellate Court properly determine that . . . § 46b-38b did not apply to this case?; (2) Did the Appellate Court properly determine that any duty created by the statutory scheme was not owed to the plaintiff's decedent?; and (3) Did the Appellate Court properly determine that any duty was discretionary?" *Coley* v. *Hartford*, 308 Conn. 922,      A.3d      (2013).

[4] General Statutes § 52-557n (a) provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or

omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.”

[5] We note that the trial court’s order granting summary judgment in favor of the defendant does not discuss the facts alleged in this case, nor does it reference any affidavits or supporting documents submitted by the parties. See footnote 8 of this opinion. At oral argument, the parties agreed that the facts as set forth in the Appellate Court opinion were drawn from the police report that the investigating police officer, Garrett Fancher, and the assisting police officer, Zachary Freeto, prepared in connection with the alleged incidents in the present case. The defendant submitted the police report as an exhibit to its memorandum in support of the motion for summary judgment. See Practice Book § 17-45 (“[a] motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like”).

The plaintiff does not contest the facts as set forth in the police report, nor does he contest the facts as recited by the Appellate Court. Accordingly, in our disposition of this appeal we rely on the uncontested facts in the police report, as recited in the Appellate Court opinion and as construed in the light most favorable to the plaintiff. See *Coley* v. *Hartford*, supra, 140 Conn. App. 317 n.2 (“ ‘[t]he record [is] viewed in the light most favorable to the nonmoving plaintiff for purposes of reviewing the trial court’s grant of summary judgment’ ”), quoting *Martinelli* v. *Fusi*, 290 Conn. 347, 350, 963 A.2d 640 (2009). Additional facts from the police report in the present case are set forth as necessary.

[6] It is undisputed that Chapdelaine returned to 47 Bolton Street and fatally shot the decedent.

[7] We have described the identifiable person-imminent harm exception to discretionary act immunity as follows: “Discretionary act immunity is abrogated when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . . By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to harm.” (Citation omitted; internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 616, 903 A.2d 191 (2006).

[8] The trial court’s order granting the defendant’s motion for summary judgment provides in its entirety as follows: “Under [§] 52-557n (a) (2) (B), the [defendant] is not liable for discretionary acts and the officers’ decision to try and find and arrest the domestic violence perpetrator and eventual shooter, was a discretionary act. The [decedent], shooting victim, was not an identifiable victim subject to imminent harm, [Williams] was. [Section] 46b-38b (d) requires the officers to exercise reasonable time and reasonable judgment which makes it discretionary.”

The plaintiff did not challenge the trial court’s determination that there is no identifiable person-imminent harm exception to discretionary act immunity in the present case. During oral argument in the Appellate Court, the plaintiff explained that the decision not to appeal this aspect of the trial court’s decision was because, in the plaintiff’s view, the decedent would not qualify as an identifiable person under the identifiable person-imminent harm exception to discretionary act immunity. *Coley* v. *Hartford*, supra, 140 Conn. App. 320 n.5.

We express no view as to whether the plaintiff’s allegations, if taken as true, are legally sufficient to satisfy the criteria required to overcome governmental immunity under the identifiable person-imminent harm exception to discretionary act immunity.

[9] Because we find that the police response procedures apply in the present case, and because the third issue is dispositive, we do not decide whether the statute also operated to impose a ministerial or discretionary duty on police officers to remain at the scene for a reasonable time.

We note, however, that the plaintiff concedes that the facts in the present case do not fall exclusively under *either* of the two relevant subsections of § 46b-38b. See footnote 1 of this opinion. Section 46b-38b (a) and (d), respectively, appear to prescribe distinct police responses to domestic violence disputes depending upon whether cause for arrest exists. When there

is cause for arrest, subsection (a) requires that police officers arrest the domestic violence perpetrator. When there is no cause for arrest, subsection (d) requires that police officers remain at the scene for a reasonable time. The statute does not expressly prescribe the appropriate police response when there is cause for arrest, but no arrest is in fact made because the perpetrator cannot be located.

In the present case, it is undisputed that police officers were required to arrest Chapdelaine under § 46b-38b (a) upon information that he had committed a family violence crime. It is also undisputed, however, that police officers were attempting to arrest Chapdelaine but were unable to locate him. Because Chapdelaine was still at large, the plaintiff contends that police officers were required under § 46b-38b (d) to remain at the scene until the likelihood of imminent violence had been eliminated, presumably upon Chapdelaine's arrest. In essence, the plaintiff argues that the legislature must have intended to require police officers to remain at the scene for a reasonable time, pursuant to § 46b-38b (d), when, as in the present case, grounds for arrest exist but no arrest is in fact made.

We agree with the plaintiff that the facts in the present case reveal a potential gap in the statute. In view of our determination that the police response procedures gave rise to some type of duty to remain at the scene in the present case, however, we do not decide whether § 46b-38b (d) also required police officers to remain at the scene in the present case.

[10] Although this court has recognized three exceptions to discretionary act immunity; see *Grady* v. *Somers*, 294 Conn. 324, 338 and n.14, 984 A.2d 684 (2009); the plaintiff does not argue that any of those exceptions are applicable under the facts in the present case.

[11] We note that the plaintiff also argues that the defendant had a ministerial duty under § 46b-38b (a) and the police response procedures, respectively, to make an arrest when a family violence crime had been committed, and that the defendant violated that duty by failing to arrest Chapdelaine. These claims do not warrant extended discussion for the following reasons.

First, even if we were to assume that the defendant had a ministerial duty under § 46b-38b (a) to arrest Chapdelaine upon information that he had committed a family violence crime, it is undisputed that police officers were attempting to arrest Chapdelaine. When Chapdelaine could not be found, the police officers prepared a warrant for his arrest. It would be absurd to conclude that law enforcement's failure to arrest a suspect who cannot be located, despite reasonable efforts to do so, violates § 46b-38b (a). We therefore conclude that, as a matter of law, the defendant complied with any mandatory directive that was arguably owed to the plaintiff's decedent under § 46b-38b (a).

For these same reasons, we reject the plaintiff's claim that the defendant violated a ministerial duty, under the police response procedures, to arrest Chapdelaine for violating a protective order. Furthermore, it bears noting that the police response procedures prescribe that when an officer has probable cause to believe that a protective order has been violated, and the violator is not present, the officer must apply for an arrest warrant. See Hartford Police Dept. Policy and Procedure, supra, § III (B) (5) (e) ("[i]f the violator is not present when the officer arrives, the officer shall investigate the incident and, if probable cause exists, the officer will apply for an arrest warrant"). It is undisputed that the police officers in the present case followed this procedure.

[12] In support of his claim to the contrary, the plaintiff submitted the sworn affidavit of Reginald F. Allard, Jr., a "police procedure expert," as an exhibit to his memorandum in opposition to the defendant's motion for summary judgment. Allard's affidavit provides in relevant part as follows: "In my opinion, [§ 46b-38b et seq. and the police response procedures] are mandatory and must be followed by municipal employees without question, and involve *no discretion as to the obligation to remain at the scene* of the domestic violence incident *until the victim was no longer under threat*." (Emphasis added.)

Allard's statement that the statutory scheme and the police response procedures "are mandatory" and "involve no discretion" provide only a conclusion that, in his opinion, the police officers had a ministerial duty to remain at the scene. Allard's opinion is thus a conclusory statement that does not create a genuine issue of material fact as to the nature of the duty allegedly owed to the plaintiff's decedent. See *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 557, 791 A.2d 489 (2002) ("[a]lthough an affidavit by an expert may be considered in opposition to a motion for summary judgment, conclusory affidavits, even from expert

witnesses, do not provide a basis on which to deny such motions" [internal quotation marks omitted]).

Moreover, Allard's interpretation of the police response procedures at issue in the present case is untenable. Allard's opinion directly contradicts the language of the police response procedures, which provide that officers shall remain at the scene for a "reasonable time until, in the reasonable judgement of the officer, the likelihood of further imminent violence has been eliminated." Hartford Police Dept. Policy and Procedure, supra, § III (B) (4). Allard's claim that officers have "no discretion" disregards the clear policy language vesting discretion in the officers to determine how long to remain at the scene based upon their judgment as to the likelihood of further imminent violence. Additionally, Allard's assertion in his affidavit that the officers must remain at the scene "until the victim [is] no longer under threat" ignores the explicit reference in § III (B) (4) of the police response procedures to the police officer's judgment as to the "likelihood of further imminent violence . . . ." Finally, it is telling that the expert concludes that the procedures are ministerial, yet he provides no insight into the "prescribed manner" in which police officers are supposed to act. See *Violano* v. *Fernandez*, supra, 280 Conn. 318 ("[m]inisterial refers to a duty [that] is to be performed in a prescribed manner without the exercise of judgment or discretion" [internal quotation marks omitted]).

Indeed, the police response procedures do not prescribe how long officers must remain at the scene because that duration is a variable contingent upon whether the threat of imminent violence has been eliminated, which itself is a variable contingent upon the unique facts and circumstances of the domestic violence situation. On their face, the procedures rely on the police officer's judgment as to the likelihood of further imminent violence in a given situation. Although the defendant conceivably could have prescribed set parameters for police officers to adhere to in *every* situation, for instance that officers must remain at the scene for one hour, there are no such procedures at issue in the present case. Rather, the duty to remain at the scene for "a reasonable time until, in the reasonable judgement of the officer, the likelihood of further imminent violence has been eliminated"; Hartford Police Dept. Policy and Procedure, supra, § III (B) (4); is inherently discretionary.

[13] To the extent that the plaintiff has suggested that there is a question for the trier of fact as to whether the police officers remained at the scene for a reasonable time under an objective standard of reasonableness, we disagree. By definition, negligent acts are not objectively reasonable. "Imposing liability when a municipal officer deviated from an ordinary negligence standard of care would render a municipality's liability under § 52-557n no different from what it would be under ordinary negligence. This would run counter to the purpose of governmental immunity, which is to protect a municipality from liability arising from a municipal officer's negligent, discretionary acts unless the officer's duty to act is clear and unequivocal." *Edgerton* v. *Clinton*, 311 Conn. 217, 228 n.10, 86 A.3d 437 (2014); General Statutes § 52-557n (a) (2) ("[e]xcept as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . [B] negligent acts or omissions which require the exercise of judgment or discretion").

[14] At oral argument before this court, the defendant, as evidenced by the following colloquy, appeared to concede that the police response procedures give rise to a duty to remain at the scene for at least some period of time.

"The Court: The procedures do require [the police] to remain at the scene for some time?

"The Defendant: Yes.

"The Court: Do we know from this record whether [the police] remained at the scene?

"The Defendant: Well, we do know from the record that [the police] took enough information from [the decedent] and from Williams as to what happened that day, there [is] a three page [police] report. They must have stayed for some period of time to get that information.

"The Court: But they first of all have to determine whether or not there is probable cause for an arrest, I would think that [the police] would have to take information for that, but after they determined whether or not to make an arrest, it would seem that there is some requirement that they have to stay at the scene. And do we know whether they stayed at the scene here? Other than asking for information?

"The Defendant: I guess it's not clear as to how long they were there.

"The Court: Would you agree [the police] have to stay for a certain period

of time?

"The Defendant: Yes, they do have to stay for a certain period of time. Of course, it's difficult to put a number on that . . . ."

It is unclear, however, whether the defendant's statement that the police officers had to remain at the scene for some duration was a concession that they had to remain at the scene after they determined there was probable cause for arrest as opposed to after the police initially responded to the scene.

In the dissent's view, the defendant's response to the court's inquiry at oral argument was a clear concession that police officers have a ministerial duty to remain at the scene for at least some time after there is probable cause to arrest a suspect for a family violence crime and the arrest has not been made. We are less certain. Even if the defendant did state that police officers must remain at the scene after the probable cause determination, however, it is not necessarily also true that the defendant conceded that this duty is ministerial, as opposed to discretionary. To the extent that the defendant's statements at oral argument arguably could be construed as a concession of the central issue in the present case regarding the nature of the duty arising under the police response procedures, however, we are not bound by that concession. See *State* v. *Reddick*, 224 Conn. 445, 463 n.19, 619 A.2d 453 (1993) ("we are not bound by ill advised concessions of any party"); *State* v. *Putnoki*, 200 Conn. 208, 219 n.6, 510 A.2d 1329 (1986) ("The state concurs with the defendant that the evidence was insufficient to support the trial court's finding. We are not, however, bound by the state's concession."); *State* v. *Avery*, 199 Conn. 377, 379 n.2, 507 A.2d 464 (1986) ("[w]e consider this appeal on the merits despite the state's concession, in its brief, that the trial court had erred").

[15] It is the dissent's position that the duty to remain at the scene was ministerial, despite the fact that the precise manner in which the police officers performed that duty was discretionary. The dissent relies principally on *Wright* v. *Brown*, 167 Conn. 464, 356 A.2d 176 (1975), and *Soderlund* v. *Merrigan*, 110 Conn. App. 389, 955 A.2d 107 (2008). Each of these cases is distinguishable from the present case. Therefore, we do not find the dissent's argument persuasive.

First, the dissent relies on *Wright* v. *Brown*, supra, 167 Conn. 464, for the proposition that a ministerial duty may follow a discretionary determination. That case is inapposite. In *Wright*, the statute at issue required the municipal canine control officer to determine whether a dog had bitten a person off of the dog owner's premises and, upon making that determination, to quarantine the dog. Id., 466. This court concluded that once the officer made the discretionary determination that, in the officer's judgment, the dog had so bitten someone, "the subsequent duty to quarantine for fourteen days was mandatory and, therefore, ministerial." Id., 472. The statute in *Wright*, however, clearly delineated the nature and duration of the mandatory quarantine; see id., 466 n.1; thus removing the canine control officer's discretion in the performance of that duty. The police response procedures in the present case, by contrast, afford complete discretion to police officers in performing the obligation to remain at the scene of a domestic violence incident. For that reason, *Wright* is readily distinguishable from the present case and does not persuade us that there was a ministerial duty to remain at the scene.

We also distinguish our Appellate Court's decision in *Soderlund* v. *Merrigan*, supra, 110 Conn. App. 389, from the present case. In *Soderlund*, the Appellate Court concluded that a municipality was not immune from liability for negligently failing to vacate an arrest warrant pursuant to a court order. Id., 397. The Appellate Court concluded that the order to vacate an arrest warrant is mandatory, not discretionary, reasoning as follows: "[T]he conduct complained of does not fall within the definition of a discretionary act because it does not involve the exercise of judgment and discretion. Instead, the order to vacate an arrest warrant is mandatory. It does not matter how the order is vacated, but, simply put, it must be vacated." Id. Relying on *Soderlund*, the dissent posits that regardless of *how* the police officers performed the duty to remain at the scene, they were required to remain at the scene. Respectfully, *Soderlund* does not speak to the issue in the present case, namely, whether the duty to remain at the scene was ministerial or discretionary. The two cases are not analogous. In *Soderlund*, the duty to vacate an arrest warrant was ministerial because, no matter how the warrant was vacated, there was no discretion involved in the underlying duty to vacate the warrant. In the present case, by contrast, the duty to remain at the scene was inherently discretionary because that duty, in and of itself, required the exercise of judgment under the clear language of the

police response procedures.